UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NIGHT BOX
FILED

OCT 10 2000

CLARENCE MADDOX
CLERK, USDC/SDFL MIA

INTERNATIONAL COSMETICS
EXCHANGE, INC., a New York
corporation

    Plaintiff/CounterDefendant,

vs.

GAPARDIS HEALTH & BEAUTY, INC.,

    Defendant/CounterPlaintiff,

and,

TANIOS SABA, and ABDALLAH
GHANDOUR,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 00-2280-CIV-HUCK
Magistrate Judge Garber

## COMBINED MOTION FOR INTERVENTION/JOINDER OF XAVIER TANCOGNE AND CONTINENTAL/LABORATORIES MEDICA, SARL AS CO-COUNTERPLAINTIFFS
## AND
## FOR JOINDER OF JACOB "JACK" AINI AS A CO-COUNTERDEFENDANT

COME NOW Xavier Tancogne ("Tancogne") and Continental/ Laboratoires Medica, SARL ("Continental") (collectively "Proposed Intervenors"), and Defendant/CounterPlaintiff Gapardis Health & Beauty, Inc. ("CounterPlaintiff Gapardis") (collectively "Moving Parties"), and move to intervene/join Proposed Intervenors in the above referenced lawsuit as Co-CounterPlaintiffs, and to join Jacob "Jack" Aini as Co-CounterDefendant.

In particular, Moving Parties request that the attached

1



Amended Counterclaim, [Exhibit A], also naming "John Does 1-10" as yet unidentified Co-CounterDefendants, be accepted and deemed filed as of the date of the filing of this Motion, and that Proposed Intervenors be accepted as co-movants with respect to the Joint Cross-Motion for Preliminary Injunction, which is being filed simultaneously herewith.

Grounds thereof are set forth more fully in the incorporated Memorandum.

**MEMORANDUM**

## I.   **BACKGROUND**.

As set forth in detail in the attached Amended Complaint, Proposed Intervenors are the French manufacturer and owner of "FAIR & WHITE" cosmetic products. In connection with those products, Proposed Intervenors have priority of use of the trademark "FAIR & WHITE", the trade name "Labo. Derma", and associated distinctive trade dress in United States commerce, which use continues through Proposed Intervenors' exclusive United States distributor, CounterPlaintiff Gapardis. Those intellectual property rights are the subject of the dispute in this action.

In particular, CounterDefendant, International Cosmetics Exchange, Inc. ("ICE") initiated this action against CounterPlaintiff Gapardis, <u>falsely</u> alleging that Gapardis has

engaged in unauthorized and infringing sale of cosmetics under the trademark "FAIR & WHITE."  In its Complaint, ICE has also falsely alleged that it is the exclusive United States distributor of Proposed Intervenors' "FAIR & WHITE" products.  These claims are based upon a fraudulently obtained signature of Proposed Intervenor Tancogne on a Document dated April 10, 1999 (the "April 10, 1999 Document), which Document is attached to the Amended Complaint [Exhibit A] for the Court's review.  The validity and/or breach of that document by CounterDefendant ICE is also a subject of dispute in this action.

In fact, CounterPlaintiff Gapardis, not CounterDefendant ICE, is the exclusive authorized United States distributor of Proposed Intervenors' "FAIR & WHITE" cosmetic products, and assignee of the mark "FAIR & WHITE" in the United States from Proposed Intervenors in connection with and during the term of that distribution agreement.  Moreover, CounterDefendant ICE has engaged in the sale of counterfeit "FAIR & WHITE" products, which are imitations of the genuine "FAIR & WHITE" products of Proposed Intervenors.

Jacob "Jack" Aini, whom Moving Parties seek to join as a Co-CounterDefendant, was the signatory of the April 10, 1999 Document on behalf of CounterDefendant ICE, and an active participant and moving force behind CounterDefendant ICE's counterfeiting activity.

Moving Parties seek to join/intervene Proposed Intervenors

Tancogne and Continental so that Proposed Intervenors may continue to exclusively use CounterPlaintiff Gapardis to distribute their "FAIR & WHITE" products, so that Moving Parties may obtain a ruling that the April 10, 1999 Document is found null and void, rescinded and/or materially breached by CounterDefendants, and, if necessary, to request that this Court enter an order of breach and recission. In addition, Moving Parties seek to ensure that Plaintiff stops importing and selling counterfeit and gray market "FAIR & WHITE" goods containing inferior ingredients to the genuine products, which sales damage Moving Parties' reputation and ability to sell and distribute their products.

Proposed Intervenors Tancogne and Continental also so move in order to protect their residual United States rights to the mark "FAIR & WHITE", (which will revert to them upon expiration of the current distribution agreement between Proposed Intervenors and CounterPlaintiff Gapardis), and their rights in the trade name "Labo. Derma" and associated trade dress, which have not been assigned to CounterDefendant ICE or CounterPlaintiff Gapardis. Proposed Intervenors also seek to recover damages from CounterDefendants, as a result of lost sales and reputation caused by the wrongful activities of CounterDefendants, and CounterDefendants' profits, at least prior to Proposed Intervenors' April 13, 2000 assignment of the mark "FAIR & WHITE" to Co-

4

CounterPlaintiff Gapardis.

## II.   INTERVENTION OF TANCOGNE AND CONTINENTAL.

### A.   Intervention As of Right.

In relevant part, Fed.R.Civ.P. 24(a) provides that:

"Upon timely application anyone shall be permitted to intervene in an action: when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or imped the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Id.

Thus, intervention as of right, "is appropriate whenever a timely applicant, having a direct and substantial and legally protectible interest in the subject matter of the suit, demonstrates that his ability to protect that interest may 'as a practical matter' be affected by the litigation and that his interest may not be adequately represented by existing parties." Meek v. Metropolitan Dade County, Florida, 986 F.2d 1471, 1477 (11th Cir. 1993). Because each of these elements is satisfied, Proposed Intervenor's should be granted intervention as of right.

First, this motion is timely, as it comes in the initial phase of discovery, no prejudice will result to any party as a result of not earlier filing this Motion, and substantial prejudice would result to Proposed Intervenors should the Motion be denied. See,

Id. at 1477.   In fact, the claims asserted herein are virtually identical to the those set forth in the affirmative defenses and counterclaim of the existing CounterPlaintiff Gapardis, and should not come as a surprise to or otherwise prejudice the CounterDefendants.   The brief delay in filing this motion is attributed primarily to the difficulty of communication with witnesses and clients located in foreign countries, and the ongoing investigation of these claims be private investigators employed in this case.

Second, Proposed Intervenors have a direct and substantial and legally protectible interest in the subject matter of this lawsuit, namely, their right to distribute genuine "FAIR & WHITE" products via their chosen distributor, CounterPlaintiff Gapardis, their residual rights to the mark "FAIR & WHITE" when and if their distribution agreement with CounterPlaintiff Gapardis terminates, their rights to the "Labo. Derma" trade name and associated trade dress, which have not been assigned to CounterPlaintiff Gapardis, and their rights to redress the fraudulent and deceptive misrepresentations and breaches engaged in by CounterDefendants.

Third, as a practical matter, Proposed Intervenors' ability to protect its interests in the "FAIR & WHITE" products and associated trade marks, trade names and trade dress, and to distribute those products in the United States will be affected by this litigation.

6

If Plaintiff/CounterDefendant ICE prevails, it will effectively prevent Proposed Intervenors from selling their products in the United States via their chosen distributor, CounterPlaintiff Gapardis. Moreover, it may have the effect of validating a purported "assignment" or "distribution agreement" of the "FAIR & WHITE" mark and products (the April 10, 1999 Document) which Proposed Intervenors believe is null and void, or, at least, has been materially breached by <u>inter alia</u>, CounterDefendant ICE's sales of counterfeit goods. Further, any adverse decision rendered in this case may allow ICE to continue its counterfeiting and infringing activities, all to the detriment of Proposed Intervenors.

Fourth, and finally, representation of Proposed Intervenors' rights by the existing party, CounterPlaintiff Gapardis, may not be adequate. Proposed Intervenors concede that existing Counter-Plaintiff Gapardis and Proposed Intervenors have the same overall objectives, to continue the sale of genuine "FAIR & WHITE" products in the United States through CounterPlaintiff Gapardis, and to stop gray market and counterfeit sales of the "FAIR & WHITE" products by CounterDefendants. Case law generally holds that "when applicants for intervention seek to achieve the same objectives as an existing party in the case, that party is presumed to represent the applicants' interest adequately." <u>Id</u>. However, this presumption

7

"is not a substitute for facts, nor is it to be given any weigh if the facts tend to contradict the presumed result." Id. Thus, as to adequate representation, "any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related issues in a single action." Id. at 1478. It should be remembered that Proposed Intervenors need only show "that representation 'may be' inadequate; and the burden for making that showing should be treated as minimal." Id. at 1478 (emphasis added).

Thus, despite the concurrent objectives of CounterPlaintiff Gapardis and Proposed Intervenors, this Court may find that CounterPlaintiff Gapardis is not able to adequately represent these interests without the intervention and assistance of Proposed Intervenors. For example, this Court may determine, and has indicated at the Status Conference held herein, that CounterPlaintiff Gapardis may not be the proper party to request recission or cancellation of the April 10, 1999 Document. If this Court finds that the April 10, 1999 Document has not already effectively been rescinded or cancelled, or otherwise terminated, it may be necessary for Proposed Intervenors to request such affirmative relief from this Court. Similarly, this Court may find that CounterPlaintiff Gapardis is not the proper party to assert rights to the trade dress or trade name "Labo. Derma," which have

8

not been assigned to its exclusive distributor CounterPlaintiff Gapardis.  Findings of infringement of these items may be integral in stopping the importation and sale of counterfeit goods. Finally, Proposed Intervenors would not be able to recover damages for the infringement of its intellectual property unless made a party to this action, particularly for infringement prior to the April 13, 1999 temporary assignment of the mark "FAIR & WHITE" to CounterPlaintiff Gapardis, and continued infringement of its Trade Name "Labo. Derma" and associated trade dress.

Intervention of right of Proposed Intervenors as Co-CounterPlaintiffs is justified and appropriate.

**B.    Permissive Intervention.**

In relevant part, Fed.R.Civ.P. 24(b) states that:

"Upon timely application anyone may be permitted to intervene in an action: . . . when an applicant's claim or defense and the main action has a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b).

The timeliness of this Motion is addressed above. Moreover, as noted, the Proposed Intervenors claims are consistent with and based upon the same facts and theories as the defenses and Counterclaims of Gapardis.  Thus, there are clearly questions of law and fact in common.

9

Finally, rather than prejudicing the rights of any existing party, intervention will serve to streamline discovery by making evidence and testimony of the Proposed Intervenors, who are located in France, more accessible to the existing parties.

Permissive intervention of Proposed Intervenors as Co-CounterPlaintiffs is justified and appropriate.

## III. JOINDER OF TANCOGNE AND CONTINENTAL.

For much the same reasons expressed above, CounterDefendant Gapardis requests joinder of Proposed Intervenors pursuant to Fed.R.Civ.P. 19 and 20.

### A.    Joinder of Indispensable Party.

In relevant part, Fed.R.Civ.P. 19(a), states:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . . "  Fed.R.Civ.P. 19(a).

Subsection (1) is met to the extent complete relief cannot be accorded CounterPlaintiff Gapardis.   This   may   occur   if CounterPlaintiff Gapardis is found to lack standing to assert that

10

the April 10, 1999 Document is void and unenforceable without the appearance of Proposed Intervenor Continental, the purported party to that Document, or proposed Intervenor Tancogne, the signatory to that Document.

Subsection (2)(i) is essentially identical to the requirements for intervention as of right set forth above.  Accordingly, for the reasons set forth above, in Section II.A. of this Memorandum, joinder is appropriate on this ground.[1]

Joinder of Proposed Intervenors as Co-CounterPlaintiffs is justified and appropriate, as Proposed Intervenors are indispensable parties.

## B.    **Permissive Joinder**.

Fed.R.Civ.P. 20, states, in relevant part:

> "All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."  Fed.R.Civ.P. 20(a).

This is quite similar to the standard to be applied for permissive intervention.  As noted above, the questions of law and fact are virtually identical - can Proposed Intervenors continue to

---

[1]    However, unlike intervention, Rule 19 joinder does not require a finding as to timeliness or adequacy of representation of the joined party's rights by the existing party.

11

utilize CounterPlaintiff Gapardis to distribute their "FAIR & WHITE" products, and can they prevent CounterDefendants from selling counterfeit "FAIR & WHITE" products? Moreover, the transactions or series of transactions in question are also identical, and include interpretation and ruling with respect to the purported April 10, 1999 Document, and with respect to the sales of counterfeit products by CounterDefendants, and genuine products by Moving Parties.

Permissive joinder of Proposed Intervenors as Co-CounterPlaintiffs is justified and appropriate.

## IV. JOINDER OF JACOB "JACK" AINI AS CO-COUNTERDEFENDANT.

Joinder of Aini is justified both on the grounds that Aini is an indispensable party, and on the grounds that permissive joinder is appropriate.

Again, Fed.R.Civ.P. 19(a), states, in relevant part:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, . . . ." Fed.R.Civ.P. 19(a).

Aini is an indispensable party subject to joinder under Rule 19, because the existing CounterDefendant, ICE, may not, in fact exist, and Aini, to date, is the primary actual, physical person upon whom injunctive relief or damages may be imposed, as the

12

apparent principal and agent of ICE.

In particular, in the instant action, CounterPlaintiff ICE, is purported in the Complaint to be "International Cosmetics Exchange, Inc.", a purported "corporation organized and existing under the laws of the state of New York," [Complaint, first unnumbered paragraph and ¶6]. Upon information and belief, no such corporation exists. This is supported by the attached print-out of the New York governmental database pertaining to corporate filings, which fails to show any such corporation. [Exhibit B].

Moreover, as set forth in the Declarations of Michel Farah and Xavier Tancogne, previously filed with this Court,[2] it was Aini who was a signatory to the April 10, 1999 Document upon which CounterPlaintiff ICE relies in its Complaint for ownership of the contested mark "FAIR & WHITE." Also, as shown in the Farah and Tancogne Declarations, Aini was clearly a moving force, and active participant in the infringement, and therefore is jointly and severally liable under applicable law. See, Chanel Inc. v. Italian Activewear of Florida Inc., 931 F.2d 1472, [19 USPQ2d 1068, 1072] (11th Cir. 1991); Bauer Lamp Co., Inc. v. Shaffer, 941 F.2d 1165 [20 USPQ2d 1128, 1132] (11th Cir. 1991).

Finally, based upon these facts, Aini is also properly joined

---

[2]     Said Declarations are attached to Defendants' Memorandum in Response to Preliminary Injunction.

under Fed.R.Civ.P. 20, governing the permissive joinder of parties.

Again, Fed.R.Civ.P. 20, states, in relevant part:

"All persons . . . may be joined in one action as
defendants if there is asserted against them jointly,
severally, or in the alternative, any right to relief in
respect of or arising out of the same transaction,
occurrence, or series of transactions or occurrences and
if any question of law or fact common to all defendants
will arise in the action." Fed.R.Civ.P. 20(a).

The rights to relief asserted by CounterPlaintiffs are asserted jointly against Aini and ICE, Bauer Lamp Co. Inc., 20 USPQ2d at 1132. Moreover, Aini's liability is essentially premised upon directing the activity of ICE, or at least acting as its representative in key transactions. Thus, the claims against both ICE and Aini, arise out of the same fraudulent and infringing transactions, occurrences, or series of transactions and occurrences.

Joinder as an indispensable party and permissive joinder of Aini as a Co-CounterDefendant is justified and appropriate pursuant to Rule 20.

## V.   **AMENDMENT OF THE COUNTERCLAIM.**

To the extent Moving Parties seek to Amend the Counterclaim of Gapardis, the primary and fundamental amendment contained therein is to join/intervene Proposed Intervenors, and join to Aini. Accordingly, for the same reasons that joinder/intervention is

14

appropriate, Amendment should be permitted.  <u>See</u>, Fed.R.Civ.P. 15 ("[L]eave to amend shall be freely given when justice so requires").

WHEREFORE, Moving Parties request that the attached Amended Counterclaim be accepted and deemed filed as of the date of the filing of this Motion, that the Proposed Intervenors be entered as CounterPlaintiffs of record in this case, and that CounterDefendant Aini be entered as a CounterDefendant of record in this case. Moving Parties further request that CounterDefendants be required to respond to said attached Amended Counterclaim and to the Cross-Motion for Preliminary Injunction Against Co-CounterDefendants within ten (10) days of the entry of an Order granting this Motion, or within ten (10) days of service upon their attorney Michael J. Ioannou, Esq., whichever is later, with the exception of existing CounterDefendant ICE, who, as an existing CounterDefendant with respect to the counterclaim filed by existing CounterPlaintiff Gapardis, should be required to respond to the Cross Motion for Preliminary Injunction within (10) ten days of service upon its attorney.

15

Respectfully submitted,

Dated: October 10, 2000

By: _____

John Cyril Malloy, III
Florida Bar No. 964,220
Andrew W. Ransom
Florida Bar No. 964,344
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida  33129
Telephone (305) 858-8000
Facsimile (305) 858-0008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served upon Michael J. Ioannou, Esq., MATTLIN & McCLOSKY, 2300 Glades Road, Suite 400, East Tower, Boca Raton, Florida 33431, via first class United States mail, postage pre-paid, this ____ day of October, 2000.

By: _____

Andrew W. Ransom
Florida Bar No. 964,344

f:\mm\lit\5427 Gapardis\Motion Intervene 2

16

ATTACHMENT / EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

```
_____
                               )
INTERNATIONAL COSMETICS         )
EXCHANGE, INC., a New York      )
corporation                     )
                               )
     Plaintiff/CounterDefendant, )
                               )
JACOB "JACK" AINI, and          )
JOHN DOES 1-10,                 )
                               )
     CounterDefendants          )
                               )
vs.                             )   Case No.: 00-2280-CIV-HUCK
                               )   Magistrate Judge Garber
GAPARDIS HEALTH & BEAUTY, INC., )
                               )
     Defendant/CounterPlaintiff )
                               )
XAVIER TANCOGNE, and            )
CONTINENTAL/LABORATOIRES MEDICA, )
SARL                            )
                               )
     CounterPlaintiffs,         )
                               )
and,                            )
                               )
GAPARDIS HEALTH & BEAUTY, INC.  )
TANIOS SABA, and ABDALLAH       )
GHANDOUR,                       )
                               )
     Defendants.                )
_____ )
```

## AMENDED COUNTERCLAIM OF XAVIER TANCOGNE, CONTINENTAL/LABORATOIRES MEDICA, SARL, AND GAPARDIS HEALTH & BEAUTY, INC.

COME NOW, the CounterPlaintiffs, Xavier Tancogne ("Tancogne")

and Continental/ Laboratories Medica, SARL ("Continental"), and

Gapardis Health & Beauty, Inc. ("Gapardis")    (collectively

1

"CounterPlaintiffs"), and complain against the CounterDefendants, International Cosmetic Exchange, Inc. ("ICE"), Jacob "Jack" Aini ("Aini") and  John Does 1-10 ("Does") (Collectively "Counter-Defendants") and allege as follows:

## JURISDICTION AND VENUE

1.    This is an action for injunctive and other relief under the Federal Trademark Act, 15 U.S.C. §1051, et seq. ("Lanham Act"), particularly 15 U.S.C. §§ 1124 and 1125(a), for falsely copying and simulating the name of a foreign manufacturer, falsely representing country of manufacture of products, trademark infringement, false designation of origin, false description or representation, and related unfair competition.  CounterPlaintiffs also asserts claims under the Florida Trademark Act, §495.011, et seq., for injury to business and reputation and dilution, §495.151, and in accordance with common law rights, for trademark infringement and unfair competition.  Collectively, or, as appropriate, in the alternative, CounterPlaintiffs also brings an action pursuant to 28 U.S.C. §2201 for a declaratory judgment of non-validity, recission,  avoidance, and/or limited scope of the document designated as Exhibit A, as set forth more fully below, and related claims for breach of contract and fraud.

2.    This Court has jurisdiction over this action pursuant to

2

28 U.S.C. §§ 1331, 1338(a) and 1338(b). This Court also has jurisdiction pursuant to 15 U.S.C. §1121 and the doctrine of pendent jurisdiction. This Court also has jurisdiction over the state law claims pursuant to the doctrine of supplemental jurisdiction, as embodied in 28 U.S.C. § 1367, as said claim is so related to the claim in the action within this Court's original jurisdiction that it forms part of the same case or controversy.

3.     Jurisdiction is also appropriate pursuant to diversity of citizenship under 28 U.S.C. §1332(a)(3), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states and subjects of a foreign state.

4.     Jurisdiction over CounterDefendants is proper pursuant to Florida Statutes, 48.193, by virtue of CounterDefendants engaging in activities or omissions as set forth in 48.183(1)(a),(b),(f)2, and/or (2). In addition, jurisdiction over CounterDefendant ICE is proper as CounterDefendant ICE has sued CounterPlaintiff Gapardis ("Gapardis") for trademark infringement in the above referenced action, which allegations directly relate to the subject matter of this Counterclaim.

5.     Venue is proper under 28 U.S.C. §§ 1391(b) in that a substantial part of the wrongful acts set forth herein, and committed by CounterDefendants, occurred in or originated from the

3

Southern District of Florida.

## THE PARTIES

6.    CounterPlaintiff Continental is a corporation of France, having a business address at Centre Neptune-Rue des Maraichers - 33260 La Teste-France, France, and is entered at the Registry of Commerce, Bordeaux No. B 338 780 984.   "Labo. Derma" is a department of Continental, and trade name utilized by Continental.

7.    CounterPlaintiff Tancogne is a citizen and resident of France, having a business address at Centre Neptune-Rue des Maraichers - 33260 La Teste-France, and owner of the trademark "FAIR & WHITE" and trademark registration for the mark "PARIS FAIR & WHITE" (the "FAIR & WHITE" mark) in France, and other foreign locations. CounterPlaintiff Tancogne owns 95% of the shares of CounterPlaintiff Continental, and is the manager of that company.

8.    CounterPlaintiff Continental manufactures and sells genuine "FAIR & WHITE" cosmetics ("CLM 'FAIR & WHITE' products") under license with respect to the "FAIR & WHITE" mark from CounterPlaintiff Tancogne, and with CounterPlaintiff Tancogne's permission and strict quality control.

9.    CounterPlaintiff Gapardis is a corporation duly organized and existing under the laws of the State of Florida, doing business in the Southern District of Florida, and having an address at 7494

4

N.W. 54th Street, Miami, FL 33166. CounterPlaintiff Gapardis has previously filed a Counterclaim in this action, and now joins in this Amended Counterclaim.

10. CounterDefendant International Cosmetics Exchange, Inc., ("ICE") has filed a Complaint in this action and alleged therein that it is a New York corporation, but has not provided an address. Upon information and belief, no such New York corporation exists, nor have any certificates of incorporation, corporate filings or attempts to comply with New York law related thereto been made or filed with the State of New York. Activities of ICE are alleged against that entity to the extent that entity is found to exist or have authority to carry out such activities.

11. CounterDefendant Jacob "Jack" Aini is an individual believed to reside in Queens, New York. Upon information and belief, CounterDefendant Aini actively and knowingly caused and participated in the infringing and wrongful conduct set forth herein, and was a moving force behind such wrongful conduct.

12. John Does 1-10, upon information and belief, are companies or individuals who have engaged in and are continuing to engage in the complained of activities. Said persons or entities will be specified when further identified.

5

## COUNTERPLAINTIFFS' PRODUCTS, TRADE MARKS AND TRADE DRESS

13.   At least as early as 1997, and long prior to the acts of CounterDefendants complained of herein, CounterPlaintiff Tancogne, through his company, CounterPlaintiff Continental (hereafter collectively referred to as "CLM") adopted and used in United States interstate commerce, the inherently distinctive designation and mark "PARIS FAIR & WHITE" and "FAIR & WHITE" and inherently distinctive trade dress, ("FAIR & WHITE Trademark and Trade Dress") for and in connection with cosmetic products manufactured by Continental, many or all bearing the trade names and designations "French Dermatological Laboratory" and "Labo. Derma" ("Labo. Derma Trade Names"), for and in connection with cosmetic products (the "CLM 'FAIR & WHITE' products"). The adoption and use of the CLM "FAIR & WHITE" products and associated "FAIR & WHITE" Trademarks and Trade Dress and "Labo. Derma" Trade Names was in interstate commerce and has not been abandoned. Currently, such use continues through CounterPlaintiffs' authorized exclusive United States Distributor, Gapardis.

14.   As memorialized in Exhibit B, Gapardis is and since April 13, 2000 has been the exclusive authorized distributor of CLM "FAIR & WHITE" products in the United States, Canada and the Caribbean Islands.   That distribution agreement is valid and subsisting.

15.   As set forth in Exhibit B, during the term of, and in

6

furtherance of that distribution agreement, CounterPlaintiffs CLM have assigned all rights to the mark "FAIR & WHITE", including the goodwill it represents, to CounterPlaintiff Gapardis in the above referenced territory, upon the agreement that upon expiration or termination of said agreement, and upon request of CounterPlaintiffs CLM, Gapardis shall assign the mark "FAIR & WHITE" back to them. No such termination, expiration, or reassignment has occurred or been requested.

16. No other valid distribution agreement or assignment exists, existed or was in force during any relevant time period with respect the use of "FAIR & WHITE", or the distribution of CLM "FAIR & WHITE" cosmetic products.

17. The CLM "FAIR & WHITE" products are and at all times have been manufactured pursuant to confidential and trade secret formulas developed by CounterPlaintiff Tancogne exclusively for use with CLM "FAIR & WHITE" products. The trade secret formula for CLM "FAIR & WHITE" products was not disclosed to CounterDefendants, and CounterDefendants do not have access to said formula, and cannot and do not use it in any products which it manufactures or has manufactured. Any attempt to manufacture and sell a copy or imitation of the CLM "FAIR & WHITE" product and formula would severely damage the reputation of CLM "FAIR & WHITE" products for quality and consistency, as it would not contain the trade secret

formula, and would not be produced under Tancogne and CLM's supervision.

18. The CLM "FAIR & WHITE" products are manufactured only in France.

## INFRINGING ACTIONS OF COUNTERDEFENDANT

19. Long subsequent to the adoption and use of the "FAIR & WHITE" Trademarks and Trade Dress and "Labo. Derma" Trade Dress by CounterPlaintiffs, CounterDefendants, upon information and belief, commenced the manufacture, distribution in commerce, and sale of cosmetic products, bearing counterfeits and/or unauthorized gray market infringements of the CLM "FAIR & WHITE" Products, and the "FAIR & WHITE" Trademarks and Trade Dress, and "Labo. Derma" Trade Names. The packaging of said counterfeit goods further falsely claims, under the "FAIR & WHITE" mark to be manufactured by Labo. Derma, France, when, in fact, it is not so manufactured.

20. CounterDefendants are well aware and, since long prior to the acts of complained of herein, have been well aware of the goodwill represented and symbolized by the "FAIR & WHITE" Trademarks and Trade Dress, and "Labo. Derma" Trade Names, which goodwill is associated with CounterPlaintiffs CLM, and their exclusive United States distributor, CounterPlaintiff Gapardis. CounterDefendants have been well aware that the "FAIR & WHITE" Trademark and Trade Dress, and "Labo. Derma" Trade Names are widely

8

recognized and relied upon by the public and the trade as identifying CounterPlaintiffs CLM and their exclusive United States distributor, CounterPlaintiff Gapardis, and its cosmetic products and as distinguishing said products from the products of others.

21. Notwithstanding that knowledge, and indeed by reason of such knowledge, CounterDefendants have engaged in a deliberate and willful scheme to trade upon and to misappropriate for themselves the vast goodwill represented and symbolized by the "FAIR & WHITE" Trademark and Trade Dress, and "Labo. Derma" Trade Names. Upon information and belief, the acts of CounterDefendants complained of herein constitute willful and intentional counterfeiting and/or infringement of the "FAIR & WHITE" Trademarks and Trade dress, and "Labo. Derma" Trade Names, in total disregard of said rights, and were commenced and have continued in spite of CounterDefendants' knowledge that their use of the "FAIR & WHITE" Trademarks and Trade Dress, and "Labo. Derma" Trade Names, or a copy or a colorable imitation thereof, was and is in direct contravention of CounterPlaintiffs' rights.

22. The use and sale by CounterDefendants of counterfeit products and/or infringements of the "FAIR & WHITE" Trademark and Trade Dress, and "Labo. Derma" Trade Names is and at all times has been without the consent, license, or permission of CounterPlaintiffs CLM, or CounterPlaintiff Gapardis.

9

23.   CounterDefendants' aforesaid use and sale of counterfeit products and/or infringements of the "FAIR & WHITE" Trademarks and Trade Dress, and "Labo. Derma" Trade Names, is designed to and is and was at all relevant times calculated to and  likely to cause confusion,  to  cause  mistake,  and  to  deceive  customers  and perspective  costumers  as  to  the  origin  or  sponsorship  of CounterPlaintiffs'  products  and  to  cause  them  to  believe  that CounterDefendants' counterfeit products are the CLM "FAIR & WHITE" products  of  CounterPlaintiffs,  and  are  sponsored,  licensed, authorized, or approved by CounterPlaintiffs, all to the detriment of CounterPlaintiffs CLM, CounterPlaintiff Gapardis, the trade, and the public.

## THE APRIL 10, 1999 DOCUMENT

24.   As  part  of  CounterDefendants'  scheme  to  unlawfully counterfeit, infringe and trade upon the "FAIR & WHITE" Products and Trademark and Trade Dress and "Labo. Derma" Trade Names, on or about April 10, 1999, CounterDefendants, through CounterDefendant Aini induced CounterPlaintiff Tancogne to sign a document under false pretenses, a copy of which is attached hereto as Exhibit A (the "April 10, 1999 Document").  Said April 10, 1999 Document was drafted by and under the direction of CounterDefendants and their agents.

10

25. CounterPlaintiff Tancogne did not understand the document, which was not written in his native language of French, and requested that CounterDefendant Aini, a signatory of the April 10, 1999 Document, translate the document. Said request was reasonable, as CounterDefendants, through Aini, had done business with CounterPlaintiff Tancogne before without any apparent misrepresentations.

26. Upon request, CounterDefendant Aini interpreted the document and/or had the document interpreted as an agreement to agree upon a distribution agreement and not a binding contract. Aini further failed to disclose any purported transfer or assignment of rights to the mark "FAIR & WHITE" in the document. CounterPlaintiff Tancogne reasonably relied upon this interpretation in signing the April 10, 1999. Tancogne would not have signed the document had he believed it to be a binding contract, or a transfer or assignment of rights in the mark "FAIR & WHITE."

27. CounterDefendants, through Aini's personal assurances, further represented that upon CounterPlaintiff Tancogne signing the document, they would place a big order for CLM "FAIR & WHITE" products, immediately after using the document to register CLM "FAIR & WHITE" products with the FDA. CounterDefendants, through Aini's personal assurances, further represented that they would

11

immediately register the CLM "FAIR & WHITE" products with the FDA. CounterDefendants, through Aini's personal assurances, further represented that the document was necessary to legally import the CLM "FAIR & WHITE" products to the United States and to register the products with the FDA. CounterDefendants, through Aini's personal assurances, further represented that it could and would sell $250,000 of CounterPlaintiff's CLM "FAIR & WHITE" products in one year.

28. CounterPlaintiff Tancogne reasonably relied upon the above representations in signing the April 10, 1999 Document, and would not otherwise have signed the document had said representations not been made.

29. These representations were false, and made with the undisclosed intent not to perform the actions stated therein, and the actions stated therein where not, in fact, performed. Upon information and belief, as of the signing of the April 10, 1999 Document, CounterDefendants had no positive intention to purchase or distribute CLM "FAIR & WHITE" products from CounterPlaintiffs CLM. CounterDefendants did not reveal this fact to CounterPlaintiffs at any relevant time.

30. Upon information and belief, as of the signing of the document, CounterDefendants had already planned to and/or had already begun its aforesaid counterfeiting and infringing

12

activities. CounterDefendants did not reveal this fact to CounterPlaintiffs CLM at any relevant time.

31. As a result of the above stated misrepresentations, in particular, that CounterDefendants would make a big order as set forth above, distribute only CounterPlaintiffs CLM's, CLM "FAIR & WHITE" products, and could and would sell a minimum of $250,000 worth of CounterPlaintiffs CLM's, CLM "FAIR & WHITE" products in a year, CounterPlaintiffs CLM initially and unsuccessfully attempted to sell directly to the United States through CounterDefendants, instead of through third parties. CounterDefendants repeatedly refused and failed to purchase CLM "FAIR & WHITE" products from CounterPlaintiffs, and never ordered, attempted to order. or made any good faith or best effort to order $250,000 worth of CLM "FAIR & WHITE" products from CounterPlaintiffs.

32. As a result of CounterPlaintiff Tancogne signing the April 10, 1999 Document, CounterPlaintiffs have been damaged, as said document has given CounterDefendants color of authority and/or a purported assignment of trademark rights which CounterDefendants used and have used to distribute counterfeit CLM "FAIR & WHITE" products, used and have used to prevent CounterPlaintiffs from distributing legitimate CLM "FAIR & WHITE" products, all to the detriment of CounterPlaintiffs, their reputations and their ability to sell the legitimate CLM "FAIR & WHITE" products.

13

33. CounterPlaintiff Tancogne would not have signed the document had he believed that CounterDefendants were going to sell counterfeit "FAIR & WHITE" products or any products under the name "FAIR & WHITE" which were not produced by CLM, or purchase CLM "FAIR & WHITE" products from third parties, instead of directly from CLM as CounterDefendants, through Aini's personal assurances, represented they would do.

34. CounterDefendant ICE has initiated the instant lawsuit, Case No. 00-2280-CIV-HUCK against CounterPlaintiff Gapardis to prevent CounterPlaintiffs from selling legitimate CLM "FAIR & WHITE" products and has requested a preliminary injunction. CounterDefendant ICE's Complaint filed herein is premised upon the April 10, 1999 Document and a purported transfer of rights to the mark "FAIR & WHITE" contained therein to CounterDefendant ICE.

35. Upon learning of the counterfeiting activities of CounterDefendants, CounterPlaintiffs CLM terminated the relationship, by informing CounterDefendants' agents or apparent agents that they would no longer sell them CLM "FAIR & WHITE" products.

36. In addition, the letter attached as Exhibit C has been forwarded to CounterDefendants by the undersigned attorneys.

37. Based upon the foregoing, a justiciable controversy exists between the parties, _inter alia_, with respect to the

14

validity, enforceability, scope and breach of the April 10, 1999 Document.

## COUNT I - DECLARATORY JUDGMENT

38. CounterPlaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 37 as if fully set forth herein.

39. This Count seeks a declaration that the April 10, 1999 Document, including any purported distribution agreement, assignment or transfer of rights therein or related thereto, (collectively the "April 10, 1999 Document")does not constitute a valid or binding assignment, contract or existing obligation, and is void, has been voided or rescinded, and/or has been abandoned, or materially breached and rescinded, that CounterPlaintiffs have no continuing obligations to CounterDefendants of any nature pursuant to that April 10, 1999 Document or otherwise, and that CounterPlaintiffs CLM had the right to transfer and assign the mark "FAIR & WHITE" to CounterPlaintiff Gapardis.

40. The claims set forth in this Count are asserted collectively, or, in the alternative, as appropriate.

41. The April 10, 1999 Document is void for lack of consideration and/or failure of consideration.

42. The April 10, 1999 Document, and any purported agreement, is void because their was no meeting of the minds between the

15

parties as to the essential terms or meaning of the Document.

43.  To the extent the Court otherwise finds the April 10, 1999 Document to represent a contract and/or an assignment of rights, the contract was materially breached by CounterDefendant, inter alia, because CounterDefendants refused and failed to purchase or order CLM "FAIR & WHITE" products from CounterPlaintiffs, as called for in any purported agreement, or distribute those products in the United States, and have sold and permitted the sale of counterfeit "FAIR & WHITE" goods, and failed to take action against counterfeiters and unauthorized users of the mark "FAIR & WHITE" as called for in the agreement, and said agreement has been rescinded by CounterPlaintiffs.

44.  To the extent the Court otherwise finds the April 10, 1999 Document to represent a contract and/or an assignment of rights, the April 10, 1999 Document is void under the theory of fraud in the execution, in that CounterPlaintiff Tancogne was unable to fully understand the character or essential terms of the agreement, which was not written in his native language, and, upon CounterPlaintiff Tancogne's request to interpret that document, CounterDefendants misrepresented the character or essential terms of the document, inter alia, as an agreement to agree to distribute CLM "FAIR & WHITE" products, and not a binding contact, without any reference to an assignment of marks or rights, and CounterPlaintiff

16

Tancogne's reasonable reliance upon the false interpretation to sign the document in the mistaken belief as to the true nature and character of the document, wherein he otherwise would not have signed the document had the true nature and character of the document been accurately represented to him.  Prior to signing the document, CounterPlaintiffs did not have a reasonable opportunity to know of these misrepresentations, having reasonably relied upon CounterDefendants' interpretation of the document.

45.  To the extent the Court otherwise finds the April 10, 1999 Document, as written, to represent a contract and/or an assignment of rights, the April 10, 1999 Document is void on the grounds of CounterPlaintiffs' mistake in signing the document, as enforcement would be unconscionable, the mistake is material, and was made despite ordinary care, as a result of misrepresentations of CounterDefendants.

46.  To the extent the Court otherwise finds the April 10, 1999 Document, as written, to represent a contract and/or an assignment of rights, the April 10, 1999 Document is void on the ground of mutual mistake of fact as to the nature of the document, inter alia,  in that the parties did not believe the document to be a binding contract, nor an assignment.

47.  To the extent the Court otherwise finds the April 10, 1999 Document, as written, to represent a contract and/or an

17

assignment of rights, the intent, circumstances and language of the purported agreement between CounterPlaintiffs and Plaintiff demonstrates that use by CounterDefendant of the mark "FAIR & WHITE" was to enure to the benefit of CounterPlaintiffs, and that the purported agreement was, at most, merely a distribution agreement containing a temporary assignment, and not a permanent or irrevocable assignment of rights, which agreement and temporary assignment expired or where revoked, terminated or rescinded.

48.   To the extent the Court otherwise finds the April 10, 1999 Document, as written, to represent a contract and/or an assignment of rights, that Document is void and/or has been voided and rescinded, as it was entered into fraudulently, based upon knowing and intentional false representations by Plaintiff, including, inter alia, that CounterDefendant would place a big order for CLM "FAIR & WHITE" products as set forth above, distribute only CLM "FAIR & WHITE" products, and could and would sell a minimum of $250,000 CLM "FAIR & WHITE" in one year, with no concurrent intent to perform said actions, but with an undisclosed intent not to perform said actions, but instead to sell counterfeit products, which knowing and false assertions where made to induce CLM and its principal Tancogne to sign the April 10, 1999 Document which knowing and false representations were justifiably relied upon by CounterPlaintiffs to their detriment.

18

49. The purported assignment of trademark rights in the April 10, 1999 Document is void as an assignment in gross for failure to transfer the goodwill associated with the mark "FAIR & WHITE."

50. The April 10, 1999 Document, on its face, does not purport to assign or transfer rights to the "FAIR & WHITE" Trade Dress, and the "FAIR & WHITE" Trade Dress has not been effectively assigned.

51. The April 10, 1999 Document, on its face, does not purport to assign or transfer rights to the "Labo. Derma" Trade Names and the "Labo. Derma" Trade Names have not been effectively assigned.

52. CounterDefendant has failed to acquire or abandoned any rights it acquired to the "FAIR & WHITE" Trade Marks and Trade Dress, or "Labo. Derma" Trade Names because said marks, trade dress and trade names are being used by or with permission of CounterDefendants, or persons in privity with CounterDefendants, so as to misrepresent the source of the goods or services on or in connection with which the mark is used.

53. CounterDefendant has failed to acquire or abandoned any rights it acquired to the "FAIR & WHITE" Trade Marks and Trade Dress, or "Labo. Derma" Trade Names because CounterDefendants are misrepresenting to the public the nature and origin of the product to which said marks and trade dress are affixed, by the label(s)

19

and packaging attached thereto, which deception and misrepresentation is directly connected to the subject matter of this lawsuit, and CounterDefendants are therefore guilty of unclean hands.

54. CounterDefendants' fraudulent and deceptive course of conduct with CounterPlaintiffs, represents unclean hands, and CounterDefendants cannot and have not created any trademark rights by virtue of such use of the "FAIR & WHITE" Trade Marks and Trade Dress and the "Labo. Derma" Trade Names, and/or has abandoned any such rights.

55. CounterDefendants are not the owner of the mark "FAIR & WHITE" because one party to the April 10, 1999 Document, i.e. International Cosmetics Exchange, Inc., a purported New York corporation as set forth in that Document, did not and does not exist, and lacks the capacity to enter into contracts or assignments, or receive property, and the other party, Continental, was not the owner of the mark, but only a licensee without authority to enter into the purported agreement.

56. Any purported agreement related to the April 10, 1999 Document has been validly terminated and rescinded.


## COUNT II - FRAUD

57. CounterPlaintiffs incorporate herein each and every

20

allegation set forth in Paragraphs 1 through 56 as if fully set forth herein.

58. CounterPlaintiff Tancogne was fraudulently induced to sign the April 10, 1999 Document, and CounterPlaintiffs CLM were fraudulently induced to forgo sales opportunities, based upon CounterDefendants' misrepresentations set forth above.

59. CounterPlaintiffs have been damaged by the fraudulent and deceitful actions of CounterDefendants.

60. CounterPlaintiffs have no adequate remedy at law.

## COUNT III - BREACH OF CONTRACT

61. CounterPlaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 56 as if fully set forth herein.

62. Assuming the April 10, 1999 Document was ever a valid agreement, or any other valid agreement arose out of the discussions and circumstances thereto, CounterDefendants have materially breached the "agreement."

63. CounterPlaintiffs have been damaged by this material breach.

64. CounterPlaintiffs have no adequate remedy at law.

21

## COUNT IV - FALSE DESIGNATION, DESCRIPTION, REPRESENTATION, AND UNLAWFUL IMPORTATION UNDER THE LANHAM ACT

65. CounterPlaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 56 as if fully set forth herein.

66. CounterDefendants' intentional and unlawful use in commerce of counterfeit products and/or unauthorized use of the "FAIR & WHITE" Trademark and Trade Dress in connection with cosmetic products and otherwise constitutes use in commerce of a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description, and false or misleading representation by CounterDefendants including, without limitation, that CounterDefendants' cosmetic products are the products of, are sponsored or approved by CounterPlaintiffs.

67. CounterDefendants' intentional, false and unlawful use in commerce of the "Labo. Derma" Trade Names in connection with cosmetic products and otherwise and false designations of manufacture, geographic origin, testing and ingredients in its labeling, use and promotion of counterfeit "FAIR & WHITE" products constitutes use in commerce of a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description, false representation or misleading representation by CounterDefendants.

22

68. CounterDefendants' importation of counterfeit "FAIR & WHITE" goods falsely bearing the foreign manufacturer's and trader's designation "Labo. Derma," and "French Dermatological Laboratory", falsely indicating that the goods come from France, when in fact, the counterfeit goods so imported are not manufactured by "Labo. Derma," and do not come from France, constitutes a violation of §42 of the Lanham Act, 15 U.S.C. §1124.

69. CounterDefendants' aforesaid acts constitute unfair competition and false designation of origin, false or misleading description of fact, and/or false or misleading representations, in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

70. CounterDefendants' acts have harmed CounterPlaintiffs' reputation, severely damaged CounterPlaintiffs' goodwill, and upon information and belief, have diverted sales from CounterPlaintiffs.

71. CounterDefendants aforesaid acts have caused and will cause great and irreparable injury to CounterPlaintiffs, and unless said acts are restrained by this Court, they will be continued and CounterPlaintiffs will continue to suffer great and irreparable injury.

72. CounterPlaintiffs have no adequate remedy at law.


## COUNT V - UNFAIR COMPETITION

73. CounterPlaintiffs incorporate herein each and every

23

allegation set forth in Paragraphs 1 through 56, and 65 through 72, as if fully set forth herein.

74. CounterDefendants' aforesaid acts constitute infringement, misappropriation, and misuse of the "FAIR & WHITE," Trademark and Trade Dress, and "Labo. Derma" Trade Names, constitute unfair competition, palming-off and passing-off against CounterPlaintiffs and unjust enrichment of CounterDefendant, all in violation of CounterPlaintiffs' rights at common law, and under the law of the State of Florida in accordance with Fla. Stat. §495.161.

75. CounterDefendants' acts have harmed CounterPlaintiffs' reputation, severely damaged CounterPlaintiffs' goodwill, and upon information and belief, have diverted sales from CounterPlaintiffs.

76. CounterDefendants' aforesaid acts have caused and will continue to cause great and irreparable injury to CounterPlaintiffs, and unless said acts are restrained by this Court, they will be continued and CounterPlaintiffs will continue to suffer great and irreparable injury.

77. CounterPlaintiffs have no adequate remedy at law.

## COUNT VI - INJURY TO BUSINESS REPUTATION AND DILUTION

78. CounterPlaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 56, and 65 through 72,

as if fully set forth herein.

79. By virtue of extensive and substantial promotion and wide-spread sales of its CLM "FAIR & WHITE" products under the "FAIR & WHITE" Trademark and Trade Dress, and "Labo. Derma" Trade Names by CounterPlaintiffs, CounterPlaintiffs' maintenance of high quality standards relating to such cosmetic products, the "FAIR & WHITE" Trademark and Trade Dress, and "Labo. Derma" Trade Names possess a high degree of distinctiveness that is capable of dilution. The "FAIR & WHITE" Trademark and Trade Dress, and "Labo. Derma" Trade Names identify to the public that CounterPlaintiffs clm, and their exclusive distributor, CounterPlaintiff Gapardis, are the source of CLM "FAIR & WHITE" cosmetic products, which enjoy an outstanding reputation for quality and distinctiveness.

80. CounterDefendants' aforesaid acts have diluted and are likely to continue diluting the distinctive quality of the "FAIR & WHITE" Trademarks and Trade Dress, and "Labo. Derma" Trade Names constituting injury to business and reputation in violation of CounterPlaintiffs' rights under the Florida Anti-Dilution Act, Fla. Stat. §495.151.

81. CounterDefendants' acts have harmed CounterPlaintiffs' reputation, severely damaged CounterPlaintiffs' goodwill, and upon information and belief, have diverted sales from CounterPlaintiffs.

82. CounterDefendants' aforesaid acts have caused and will

25

continue to cause great and irreparable injury to CounterPlaintiffs, and unless said acts are restrained by this Court, they will be continued and CounterPlaintiffs will continue to suffer great and irreparable injury.

83. CounterPlaintiffs have no adequate remedy at law.

**WHEREFORE**, CounterDefendant prays:

A. That this Court will adjudge that the "FAIR & WHITE," Trademark and Trade Dress, and "Labo. Derma" Trade Names are owned by CounterPlaintiffs and have been infringed and diluted by CounterDefendants, as a direct and proximate result of the acts of CounterDefendants as set forth in this Counterclaim, in violation of CounterPlaintiffs' rights under the Lanham Act, 15 U.S.C. §1051 et seq., the Florida Anti-Dilution Act, Fla. Stat. §495.161, and the common law.

B. That this Court will adjudge that CounterDefendants have competed unfairly with CounterPlaintiffs in violation of CounterPlaintiffs' rights at common law and in violation of CounterPlaintiffs' rights under the Lanham Act, 15 U.S.C. §§1124, 1125(a).

C. That this Court declare that the April 10, 1999 Document, including any assignment of rights, is void and/or has been lawfully abandoned, voided or rescinded, or, in the alternative, that this Court enter an Order voiding and rescinding said

26

document, and any assignment therein, and finding that CounterPlaintiffs have no further or continuing obligations under said Document.

D.    That CounterDefendants, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be preliminarily and permanently enjoined and restrained:

1)    From using any of the "FAIR & WHITE" Trademark and Trade Dress, or any trademark similar thereto, in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

2)    From using the "Labo. Derma" Trade Names, or any similar trade name or trademark;

3)    From using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of CounterDefendants, or of any third parties affiliated therewith, are sponsored by, authorized by, or in any way associated with CounterPlaintiffs;

3)    From infringing the "FAIR & WHITE" Trademarks and Trade Dress, or the "Labo. Derma" Trade Names;

4)    From otherwise unfairly competing with CounterPlaintiffs;

27

5) From falsely representing themselves as being connected with CounterPlaintiffs, or sponsored by or associated with CounterPlaintiffs, or engaging in any act which is likely to falsely cause the trade, retailers, and/or members of the purchasing public to believe that CounterDefendants are associated with CounterPlaintiffs.;

6) From using any reproduction, counterfeit, copy or colorable imitation of the "FAIR & WHITE" Trademarks and Trade Dress, or "Labo. Derma" Trade Names in connection with the publicity, promotion, sale, or advertising of goods sold by CounterDefendants including, without limitation, cosmetic products;

7) From affixing, applying, annexing, or using in connection with the sale of any goods sold by CounterDefendants including, without limitation, cosmetic products, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being those of CounterPlaintiffs, or falsely advertising the ingredients, characteristics, qualities, or geographic origin of such goods, and from offering such goods in commerce;

8) From diluting the distinctive quality of the "FAIR & WHITE" Trademark and Trade Dress, or "Labo. Derma" Trade

28

Names within the meaning of the Fla. Stat. §495.151; and

9)    From importing into the United States any products bearing the "Labo. Derma" Trade Names, or any similar trade name or trademark

E.    That CounterDefendants be required to deliver up for destruction all goods, bottles, boxes, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other written or printed material in the possession or control of CounterDefendants which bears the "FAIR & WHITE" Trademark or Trade Dress, or "Labo. Derma" Trade Names or any colorable imitations thereof, alone or in combination with any other word or element, or which are used in connection with the sale of infringing and/or counterfeit products bearing any of the "FAIR & WHITE" Trademarks and Trade Dress or "Labo. Derma" Trade Names, and all plates, molds, matrices, and other means from making the aforesaid items.

F.    That CounterDefendants be ordered to forthwith identify to CounterPlaintiffs all active and passive participants in the acts complained of herein and supply to CounterPlaintiffs a complete list of the persons and/or entities from whom CounterDefendant purchased, and to whom CounterDefendant distributed and/or sold any goods, including but not limited to cosmetic products, bearing the "FAIR & WHITE" Trademark or Trade Dress, or "Labo. Derma" Trade Names.

29

G.  That CounterDefendants be directed to file with this Court and to serve upon CounterPlaintiffs within thirty (30) days after service of the injunction issued in this action, a written report under oath. under oath, setting forth in detail the manner of compliance with the above paragraphs.

H.  That CounterPlaintiffs recover the CounterDefendants' profits and the damages of CounterPlaintiffs arising from CounterDefendant's acts of trademark infringement, unfair competition, dilution, breach of contract, and fraud, and that the Court, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, enter judgment, in addition to the amount of the recovery based on profits or damages, for such sum as the Court shall find to be just, and in addition to the amount of actual damages found, such sums shall be in an amount three (3) times the amount of the actual damages found.

I.  That CounterPlaintiffs have and recover, pursuant to the laws of the State of Florida, in addition to its actual damages, punitive damages in an amount which the Court deems just and proper.

J.  That CounterPlaintiffs have and recover both prejudgment and post-judgment interest on each and every damage award.

K.  That CounterPlaintiffs have and recover its reasonable attorney fees incurred in this action, pursuant to §35 of the

30

Lanham Act, 15 U.S.C. §1117, or as otherwise authorized by law or contract.

L.    That CounterPlaintiffs have and recover its taxable costs and disbursements herein, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, or as otherwise authorized by law.

M.    That CounterPlaintiffs have other and such further relief as the Court may deem just and proper.

Trial By Jury is demanded on all issues so triable.

Respectfully submitted,

Dated: October 10, 2000          By: _____
                                  John Cyril Malloy, III
                                  Florida Bar No. 964,220
                                  Andrew W. Ransom
                                  Florida Bar No. 964,344
                                  MALLOY & MALLOY, P.A.
                                  2800 S.W. Third Avenue
                                  Miami, Florida  33129
                                  Telephone (305) 858-8000
                                  Facsimile (305) 858-0008

f:\mm\lit\5427 Gapardis\Counterclaim 3

31

## AGREEMENT

THIS AGREEMENT made and entered into as of 10th April, 1999, by and between **INTERNATIONAL COSMETICS EXCHANGE, INC.**, a New York corporation, having its principal place of business at 56-25 Flushing Avenue, Queens, New York (hereinafter "I.C.E.") and **CONTINENTAL LABORATOIRES MEDICA**, a corporation organized under French law, having its principal place of business at Centre Neptune, Rue des Maraichers, 33260 La Teste, France (hereinafter "C.L.M.").

### WITNESSETH:

A.    C.L.M. is the owner and holder of all rights, title and interest in the brand name "FAIR & WHITE" in connection with cosmetics, namely face and body creams, soaps, lotions, gels and the like (the "Products") in France and throughout the various European countries.

B.    I.C.E. has developed, distributed and marketed the "FAIR & WHITE" brand name in connection with the Products in the United States, Canada and the Caribbean Islands, and as a result of I.C.E.'s efforts, the "FAIR & WHITE" brand name has achieved wide-spread popularity, recognition and awareness, and has become known to retailers and consumers in the United States, Canada and the Caribbean Islands.

C.    Both I.C.E. and C.L.M. desire to enter this Agreement in the furtherance of their mutual objective of continuing to develop, market and promote the "FAIR & WHITE" brand name in the United States, Canada, the Caribbean Islands, and Europe, and in furtherance of their mutual desire to ensure the proper and swift policing, enforcement and seizure of counterfeit products bearing the "FAIR & WHITE" brand name in the United States.

NOW THEREFORE, in exchange for and in consideration of the mutual promises herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged , the parties hereto hereby agree as follows:

1.    C.L.M. grants to I.C.E. and I.C.E. accepts the exclusive right to register the "FAIR & WHITE" mark in connection with cosmetics, namely face and body creams, soaps, lotions, gels and the like in United States Patent and Trademark Office in the name of I.C.E., and to use, distribute and promote the "FAIR & WHITE" mark for any and all lawful purposes in the United States, Canada and Caribbean Islands. As of the effective date of this Agreement and for all purposes hereof, I.C.E. shall be the owner and holder of all rights, title and interest in the mark "FAIR & WHITE" in the United States, Canada and Caribbean Islands.

2.    I.C.E. agrees to pay all attorneys' fees, costs and expenses associated with the preparation and drafting of this Agreement, and the registration and maintenance of the "FAIR & WHITE" mark in the United States, Canada and Caribbean Islands.



M.A.   2.A. Ice will do its Best to yourdo more Sales than $250,000. For the time, 1-year in the Begining year, r will do it self to do 20% More in Next Five years
J/A



ALL-STATE LEGAL®

**EXHIBIT**

**A**

3.  I.C.E. further agrees to enforce and protect the "FAIR & WHITE" mark in the United States, Canada and Caribbean Islands from illegal importation, sale and distribution of counterfeit products, and to be solely responsible for all attorneys' fees, costs and expenses incurred in connection with any legal proceedings.

4.  This Agreement shall be binding upon the successors and assigns of the parties.

5.  This Agreement contains the entire understanding of the parties with respect to the subject matter hereof, and supersedes all prior oral or written agreements or understandings between the parties related to the subject matter hereof.

6.  This Agreement may not be modified or amended nor shall any provision of it be waived except by in writing signed by both parties.

7.  This Agreement shall be governed by New York law and all disputes or proceedings arising under this Agreement shall be subject to the jurisdiction and venue of the courts of New York.

8.  In the event of any dispute over this Agreement, the successful party shall be entitled to recover its reasonable attorneys' fees, costs and expenses.

IN WITNESS WHEREOF, the parties hereto have hereunder signed their names as hereinafter set forth.

WITNESSES·

INTERNATIONAL COSMETICS EXCHANGE, INC.

By: _____ Pres.
Michael Aini, as its President


WITNESSES:

CONTINENTAL LABORATOIRES MEDICA

By _____
Xavier Tancogne, as its President

- 2 -



COGNE

2. Prénoms/Given names
XAVIER PIERRE

3. Nationalité Française/French Nationality

4. Date de naissance/Date of birth
18/12/1953

5. Sexe/Sex
M

6. Lieu de naissance/Place of birth
VILLENEUVE/LOT
(Lot-et-Garonne)

7. Date de délivrance/Date of issue
03/06/1999

9. Autorité/Authority
Pour le Préfet,
Le Secrétaire Administratif, délégué
A 334
Marie-Christine BESSAGNET

8. Date d'expiration/Date of expiry
03/08/2000

10. Signature du titulaire/Holder's signature

LA TESTE-DE-BUCH

Nouveaux domiciles/New residences

12. Taille/Height
1M66

13. Couleur des yeux/Colour of eyes
BLEUE

14. La validité du présent passeport est proro... jusqu'au/Extension of the passport

Autorité/Authority

Fait le/Extend

Case 1:00-cv-02280-PCH Document 43 Entered on FLSD Docket 10/16/2000 Page 51 of 62



**NEW YORK STATE** DRIVER LICENSE

ID: 395 415 591
DOB: 11-03-62

AINI,JACOB
2017 OCEAN PKWY
BROOKLYN    NY
11226

SEX: M  EYES: BR  HT: 6-01  CLASS: D
END:        REST:
ISSUED: 02-27-96  EXPIRES: 11-03-01

62717670

## EXCLUSIVE DISTRIBUTION AGREEMENT

This Agreement is made by and between Xavier Tancogne **Continental Laboratoires Medica,** ("CLM"), whose address is Centre Neptune-Rue des Maraichers – 33260 LA TESTE-FRANCE, and **Gapardis Health & Beauty, Inc.,** a Florida corporation ("Distributor"), whose address is 7494 N.W. 54 Street, Miami, Florida, in Miami-Dade County, Florida, as of April 13, 2000

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is acknowledged, the parties hereby agree and contract as follows:

1. **Scope.** CLM hereby engages Distributor, and Distributor hereby accepts such engagement, to be the exclusive distributor of certain cosmetic products bearing the Fair & White™ Trademark on behalf of CLM, in accordance with the terms and conditions set forth in this Agreement.

2. **Duties.** Distributor shall have the right, but not the obligation, to purchase and distribute, on an exclusive basis within the territory defined below, CLM's cosmetic products bearing the Fair & White™ Trademark. Prices will be set by CLM, after consultation with and input from Distributor.

3. **Exclusive Territory.** Distributor's exclusive territory shall be the United States, Canada and the Caribbean Islands.

4. **Expenses.** Distributor shall be solely responsible for paying all expenses incurred by Distributor or Distributor's subagents or contractors in performing this Agreement.

5. **Term.** The term of this Agreement shall commence on the date set forth above, and shall continue for a period of five (5) years. This Agreement shall automatically renew for a second five (5) year term, unless either party gives the other notice to the other of its intention to terminate the Agreement upon the expiration of the first term at least 180 days prior to the expiration of the first term.

6. **Termination.** This Agreement shall be terminated immediately and without notice upon either parties' bankruptcy or insolvency. This Agreement may be terminated by CLM for cause in the event Distributor breaches any provision of this Agreement, if, after 30 days written notice of a default by CLM to Distributor, Distributor fails to cure the default within said 30 days. This Agreement may be terminated by Distributor for cause in the event Distributor breaches any provision of this Agreement,- if, after 30 days written notice of a default by Distributor to CLM, CLM fails to cure the default within said 30 days.



1

7. **Restrictions on Sales.** All sales leads outside Distributor's territory shall be referred to CLM.

8. **Samples.** CLM shall furnish Distributor such product samples as CLM deems sufficient from time to time. All inventory and samples so furnished shall remain the property of CLM, and may not be sold without the prior written consent of CLM.

9. **Independent Contractor Relationship.** Distributor is an independent contractor and is not an employee, servant, partner or joint venturer of CLM. CLM shall determine the services to be provided by Distributor, but Distributor shall determine the legal means by which it accomplishes the services in accordance with this Agreement. CLM is not responsible for withholding, and shall not withhold or deduct from the commissions, FICA or taxes of any kind, unless such withholding becomes legally required. Distributor is not entitled to receive and shall not be entitled to workers compensation, unemployment compensation, medical insurance, life insurance, paid vacations, paid holidays, pension, profit sharing, or Social Security on account of his or her services to CLM.

10. **Covenants of Distributor.** Distributor covenants and agrees to with CLM as follows, and Distributor acknowledges that CLM would not be entering into this Agreement if Distributor had not made these covenants:

a. Distributor will not at any time, during or after the term of this agreement, directly or indirectly divulge or otherwise disclose to anyone other than an employee of CLM the names or addresses of customers or potential customers of CLM, any contents of files maintained by CLM or by Distributor for CLM, prices and pricing policies of CLM, procedures and policies of CLM, or other information which is confidential or proprietary to CLM, unless CLM gives its prior written consent to such disclosure.

b. All books, records, notes, reports, copy, advertising, contracts, order, draft, accounts, documents and other information or writings relating to CLM or its customers, employees, sales representatives, or agents, whether prepared by Distributor or otherwise coming into the possession of Distributor, is and shall remain the exclusive property of CLM and shall be returned to CLM upon demand.

c. Distributor shall report all violations of CLM's copyrights and other proprietary rights in its products and other works immediately upon discovery of such violations by Distributor.

d. Distributor acknowledges that each of the foregoing matters is important and material to the business and success of CLM and agrees that

2

any breach of this paragraph is a material breach of this Agreement, from which Distributor may be enjoined.

11. Arbitration. Any dispute, action or claim between the parties shall be resolved by binding arbitration conducted in Miami-Dade County, Florida, utilizing the American Arbitration Association. The proceeding shall be governed by the commercial arbitration rules of the American Arbitration Association; provided, however, the parties shall fully cooperate and take such action as is necessary to allow each party to conduct full discovery as provided for by the rules of civil procedure for United States District Court, including but not limited to rules 26 through 37. Either party may commence an action in a court of competent jurisdiction in Miami-Dade County, Florida, for the purpose of obtaining and enforcing the rights to discovery as provided for in this agreement.

12. Trademark Rights/Temporary Assignment. While this Agreement is in effect, and until such time as it is terminated or expires, Distributor shall use the Fair & White™ Trademark within the territory. CLM hereby assigns all rights, title and interest in and to the Fair & White™ Trademark insofar as it relates to the territory, together with the goodwill of the business symbolized by said mark in the territory, including any trademark registration(s) obtained on said mark in the territory. Upon termination or expiration of this agreement, Distributor shall, upon request, assign to CLM, on or subsequent to the date this Agreement expires or is terminated, all rights, title and interest in and to the Fair & White™ Trademark, together with the goodwill of the business symbolized by said mark in the territory, including any trademark registration(s) obtained on said mark in the territory.

13. Compliance with U.S. Labeling and Contents Laws. In connection with all cosmetic products bearing the Fair & White™ Trademark purchased and imported by Distributor, CLM warrants that all such products shall comply with applicable U.S. labeling and contents laws. CLM shall indemnify and hold Distributor harmless for all losses sustained by Distributor from a breach of this warranty, including without limitation losses due to regulatory confiscation or consumer claims, including reasonable attorney's fees at the trial and appellate levels. This right of indemnity, and any claim brought to enforce the warranty made herein, is exempt from the arbitration clause set forth in paragraph 11, above.

14. Trademark Enforcement Claim. Distributor has or will commence suit, in its name or on behalf of CLM, to enforce Distributor's exclusive right to use the Fair & White™ Trademark within the territory against I.C.E. Marketing, Jacob Aini, International Beauty Exchange, Mr. Horowitz and/or any affiliates or

co-conspirators (the "Target Defendant"). All fees and costs incurred in connection with this litigation shall be advanced by Distributor. In the event Distributor successfully concludes the litigation via judgment or settlement, Distributor's invoices will be discounted 10% until the fees and costs incurred by Distributor in connection with the litigation are reimbursed to Distributor. Any settlement with the Target Defendant which compromises the exclusive territory granted to Distributor in this Agreement shall be a breach of this agreement, and CLM shall pay Distributor for its lost profits on any sales made by the Target Defendant in the territory.

15. **Miscellaneous.** Distributor may not assign its rights or delegate its duties under this Agreement without the prior written consent of CLM. CLM's rights and obligations under this Agreement may be assigned and delegated upon notice to Distributor. Waiver by CLM of any breach by Distributor shall not operate or be construed as a waiver of any subsequent breach by Distributor. This Agreement shall be construed and governed in accordance with Florida Law. The prevailing party in any court or arbitration proceeding to enforce this agreement shall be entitled to recover its costs, expert fees and reasonable attorney's fees from the non-prevailing party. There are no contemporaneous oral agreements between the parties which induced either party to enter this agreement. This is the entire agreement between the parties and all prior agreements are merged herein.

READ AND AGREED as of the date set forth above:

CLM:                                    Distributor:

Continental Laboratoires Medica        Gapardis Health & Beauty, Inc.

By: _____                  By: _____
Print Name: X. TANCOGNE                Print Name: MICHEL MAURICE FAKAH
Print Title: MANAGER                   Print Title: PRESIDENT

Subject to the schedule of purchase attached here to : minimun annual quote 1 000 000 USD.

# Malloy & Malloy, P.A.

Patent, Trademark & Copyright Law

*"Since 1959"*
Registered Patent Attorneys
Members of the Florida Bar
Trial and Appellate Counsel

**Miami Office**
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000
Facsimile (305) 858-0008

**Ft. Lauderdale Office**
2101 West Commercial Blvd.
Reply to: Miami Office
Broward (954) 525-9611
FLORIDA (800) 337-7239

August 11, 2000

VIA FACSIMILE & MAIL
(561) 395-7050

Michael J. Ioannou, Esq.
MATTLIN & MCCLOSKY
2300 Glades Road
Suite 400, East Tower
Boca Raton, Florida 33431

Re: International Cosmetic Exchange, Inc. v. Gapardis Health
& Beauty, Inc., Tanios Saba, and Abdallah Ghandour
Our Ref.: 5.427.00

Dear Mr. Ioannou:

This firm represents Xavier Tanconge and Continental Laboratoires Medica in connection with intellectual property and unfair competition matters. We direct this correspondence to you since the filing of the above-referenced litigation indicates that International Cosmetic Exchange, Inc. is represented by you as counsel.

The purpose of this letter is to notify you and your client that the agreement dated April 10, 1999 (copy enclosed) is considered to be null and void by our client(s). To the extent that any aspect of the Agreement was ever effective, or that any relationship existed, you are hereby notified of its termination. Among other things, your client has failed to distribute adequate quantities of product and has resorted to manufacturing and/or selling counterfeit merchandise and otherwise non-genuine merchandise.

At this time, our client(s) demand that your client execute the enclosed Assignment of Trademark Rights to formerly acknowledge Mr. Tancogne's exclusive ownership of the trademark "FAIR & WHITE" in the United States, Canada, Carribean islands, and worldwide.

Please govern yourself accordingly.

Kindest regards,

Very truly yours,

**EXHIBIT**
**C**
ALL-STATE LEGAL®

John Cyril Malloy, III
For the Firm

JC3/mc
Enclosures
F:\mm\lit\Fair & White Opp ltr

## ASSIGNMENT OF TRADEMARK REGISTRATION

STATE OF FLORIDA      )
                      ) SS:
COUNTY OF MIAMI-DADE )

WHEREAS, International Cosmetic Exchange, Inc. ("Assignor"), a corporation of New York, has claimed ownership of the mark "FAIR & WHITE," for which Assignor has submitted a registration application to the United States Patent and Trademark Office, Application Serial No. 76/027779.

WHEREAS, Xavier Tancogne ("Assignee"), of France, also claims ownership of said mark and is desirous of confirming its ownership of said mark and the registration thereof;

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged the aforesaid Assignor does hereby assign unto the aforesaid Assignee, all worldwide rights, title and interest in and to the said mark, together with the good will of the business symbolized by the mark and said application therefor, No. 76/027779 and any other registrations or pending applications worldwide including the right to sue for past infringement. Assignor agrees to sign any and all additional documentation, including further assignments, to accomplish the full confirmation of Assignee's ownership of same throughout the world.

International Cosmetic Exchange, Inc.

By:_____

Title:_____

Subscribed and sworn to before me this _____ day of _____,2000.

_____
Notary Public

ATTACHMENT / EXHIBIT B

# NYS Department of State

# Division of Corporations

# Search Our Corporation and Business Entity Database

The Corporation and Business Entity Database includes business and not for profit corporations, limited partnerships, limited liability companies and limited liability partnerships, as well as other miscellaneous businesses. This information is best viewed with Netscape Navigator 4.0 and above or Internet Explorer 4.0 and above.

Every effort has been made to ensure that the information contained on this site is up to date and accurate. As the Department relies upon information provided to it, the information's completeness or accuracy cannot be guaranteed. If you have any questions about performing a search or the results you receive, please contact the NYS Department of State, Division of Corporations at (518) 473-2492, Monday - Friday, 8:00 AM - 5:00 PM.

**Entity Name** International Cosmetics

**Name Type** All

| **Search Type** | ⦿ Begins With | ⦾ Contains | ⦾ Partial |
|---|---|---|---|

Search the Database   Reset   Help.

To search the database do the following:

1. Enter the Corporation or Business Entity Name being searched for.
2. Select a Name Type.
3. Select a Search Type.
4. Click on **Search the Database**.

For a more detailed explanation on defining a search criteria click Help.

[ Corporation and Business Entity, State Records and UCC Home Page ] [ NYS Department of State Home Page ]



http://wdb.dos.state.ny.us/corp_public/corp_wdb.corp_search_inputs.show    10/6/00

# NYS Department of State

# Division of Corporations

# Search Results

**Number of Entities Found: 5**

| Entity Names Found |
| --- |
| INTERNATIONAL COSMETICS & FRAGRANCES LTD. |
| INTERNATIONAL COSMETICS & FRAGRANCES, INC. |
| INTERNATIONAL COSMETICS ASSOCIATES CORPORATION |
| INTERNATIONAL COSMETICS CONSULTANTS, INC. |
| INTERNATIONAL COSMETICS CORP. |

Row(s) 1 - 5

The Entity Names Found column lists the entity names that were found based on your search inputs. Locate the entity name you are searching for in the Entity Names Found column, and **click** on the **Entity Name** to **display entity information**. If the entity name you are searching for is not listed, click on **Search the Database** and revise your search criteria.

[ Search the Database ]

[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]

Case 1:00-cv-02280-RCH   Document 43   Entered on FLSD Docket 10/16/2000   Page 61 of 62

# NYS Department of State

# Division of Corporations

# Search Our Corporation and Business Entity Database

The Corporation and Business Entity Database includes business and not for profit corporations, limited partnerships, limited liability companies and limited liability partnerships, as well as other miscellaneous businesses. This information is best viewed with Netscape Navigator 4.0 and above or Internet Explorer 4.0 and above.

> Every effort has been made to ensure that the information contained on this site is up to date and accurate. As the Department relies upon information provided to it, the information's completeness or accuracy cannot be guaranteed. If you have any questions about performing a search or the results you receive, please contact the NYS Department of State, Division of Corporations at (518) 473-2492, Monday - Friday, 8:00 AM - 5:00 PM.

**Entity Name** International Cosmetic

**Name Type** All

| Search Type | ⊙ Begins With | ○ Contains | ○ Partial |

Search the Database | Reset | Help

To search the database do the following:

1. Enter the Corporation or Business Entity Name being searched for.
2. Select a Name Type.
3. Select a Search Type.
4. Click on **Search the Database**.

For a more detailed explanation on defining a search criteria click Help.

[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]

# NYS Department of State

# Division of Corporations

# Search Results

**Number of Entities Found: 7**

| Entity Names Found |
| --- |
| INTERNATIONAL COSMETIC & FRAGRANCE DISTRIBUTORS, LTD. |
| INTERNATIONAL COSMETIC SURGERY, P.C. |
| INTERNATIONAL COSMETICS & FRAGRANCES LTD. |
| INTERNATIONAL COSMETICS & FRAGRANCES, INC. |
| INTERNATIONAL COSMETICS ASSOCIATES CORPORATION |
| INTERNATIONAL COSMETICS CONSULTANTS, INC. |
| INTERNATIONAL COSMETICS CORP. |

Row(s) 1 - 7

The Entity Names Found column lists the entity names that were found based on your search inputs. Locate the entity name you are searching for in the Entity Names Found column, and **click** on the **Entity Name** to **display entity information**. If the entity name you are searching for is not listed, click on **Search the Database** and revise your search criteria.

[ Search the Database ]

[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]