UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 00-2280-CIV-HUCK/BROWN

I.C.E. MARKETING CORP., a New )
York corporation d/b/a and a/k/a )
INTERNATIONAL COSMETICS )
EXCHANGE, )
)
      Plaintiff, )
)
vs. )
)
GAPARDIS HEALTH & BEAUTY, )
INC., a Florida corporation, TANIOS )
SABA, ABDALLAH GHANDOUR, )
MICHEL FARAH, CONTINENTAL )
LABORATORIES MEDICA, and )
XAVIER TANCOGNE, )
)
      Defendants. )
_____ )



## FIRST AMENDED COMPLAINT

Plaintiff, I.C.E. Marketing Corp., a New York corporation d/b/a and a/k/a International Cosmetics Exchange ("I.C.E."), by and through its undersigned counsel, hereby sues defendants, Gapardis Health & Beauty, Inc. ("Gapardis"), Tanios Saba ("Saba"), Abdallah Ghandour ("Ghandour"), Michel Farah ("Farah"), Continental Laboratories Medica ("C.L.M.") and Xavier Tancogne ("Tancogne") (collectively, the "Defendants"), and alleges:

### JURISDICTION AND VENUE

1.    This is an action for unfair competition under the Lanham Act, 15 U.S.C. §1125, for trademark infringement and unfair competition under Florida common law, for injury to business reputation under Florida statutory law, §495.151 et seq. Florida Statutes, for unfair trade



practices under Florida's Deceptive and Unfair Trade Practices Act, § 501.201 et seq. Florida Statutes, for unjust enrichment and equitable accounting, for breach of contract and for tortious interference with contract under state common law.

2.     By this action, I.C.E. seeks preliminary and permanent injunctive relief, damages, and costs and disbursements of this action, including investigative costs and reasonable attorneys' fees to the fullest extent permitted by law.

3.     This Court has jurisdiction of over the first cause of action which arises under 15 U.S.C. §1125 pursuant to 15 U.S.C. §1121, 28 U.S.C. §1338 and 28 U.S.C. §1331.

4.     This Court has supplemental jurisdiction over the remaining causes of action which arise under state statutory and common law pursuant to 28 U.S.C. §1367.

5.     This Court has in personam jurisdiction over these Defendants under § 48.001 et seq. Florida Statutes, and venue is proper in this Court under 28 U.S.C. §1391 in that these Defendants have their principal place of business, are citizens of or reside in the Southern District of Florida, or transact substantial business in and throughout the Southern District of Florida, and because the causes of action alleged herein arose, accrued and/or occurred within the Southern District of Florida.

## THE PARTIES

6.     I.C.E. is a corporation organized and existing under the laws of the state of New York with its principal place of business located in Queens, New York and does business under and is also known as International Cosmetics Exchange or I.C.E. I.C.E. is the owner and holder of all rights, title and interest in the mark "FAIR & WHITE" in the United States, Canada and the Caribbean Islands in connection with cosmetics, namely face and body creams, soaps, lotions, gels

and similar products and is the exclusive distributor of such products in the United States pursuant to a written agreement with C.L.M.., the French manufacturer of such products.

7.      Gapardis is a corporation organized and existing under the laws of the state of Florida with its principal place of business located in Miami-Dade County, Florida.  Gapardis is engaged in the wrongful and tortious conduct alleged herein, including but not limited to, the unauthorized importation, use, offering for sale, sale, distribution and marketing of products bearing the "FAIR & WHITE" mark and trade dress in and around the South Florida market outside of authorized distribution channels in direct competition with I.C.E. and its exclusive licensees.

8.      Saba is a citizen of Miami-Dade County, Florida and is a principal of Gapardis and transacts business for or on behalf of Gapardis in Miami-Dade County, Florida. Upon information and belief, Saba authorized, directed, provided financial assistance, was the moving force and otherwise actively participated in the wrongful and tortious conduct alleged herein.

9.      Ghandour is a citizen of Miami-Dade County, Florida and is a principal of Gapardis and transacts business for or on behalf of Gapardis in Miami-Dade County, Florida. Upon information and belief, Ghandour authorized, directed, provided financial assistance, was the moving force and otherwise actively participated in the wrongful and tortious conduct alleged herein.

10.     Farah is a citizen of Miami-Dade County, Florida and is a principal of Gapardis and transacts business for or on behalf of Gapardis in Miami-Dade County, Florida. Upon information and belief, Farah authorized, directed, provided financial assistance, was the moving force and otherwise actively participated in the wrongful and tortious conduct alleged herein.

-3-

11.     C.L.M. is a corporation organized and existing under the laws of a foreign country with its principal place of business located in France and transacts business directed to and in Miami-Dade County, Florida. C.L.M. is engaged in the wrongful and tortious conduct alleged herein.

12.     Tancogne is a citizen of a foreign country and is a principal of C.L.M. and transacts business for or on behalf of C.L.M. directed to and in Miami-Dade County, Florida. Upon information and belief, Tancogne authorized, directed, provided financial assistance, was the moving force and otherwise actively participated in the wrongful and tortious conduct alleged herein.

### BACKGROUND FACTS

13.     As early as late 1998, I.C.E. began importing, selling, distributing, marketing and promoting products bearing the "FAIR & WHITE" mark in commerce in the United States, and has continuously developed, advanced and promoted the "FAIR & WHITE" brand name in connection with such products in the United States, Canada and the Caribbean Islands.

14.     I.C.E. has expended considerable sums and effort developing, marketing, offering for sale, selling, distributing and otherwise promoting the "FAIR & WHITE" brand name in the United States, Canada and the Caribbean Islands. As a result of I.C.E.'s efforts, the "FAIR & WHITE" brand name and the distinctive trade dress used for such products have achieved wide-spread popularity, recognition and awareness, and have become well known to wholesalers, retailers and consumers of African-American and ethnic skin care products in the United States, Canada and the Caribbean Islands.

15.     The trade dress that is used for the line of "FAIR & WHITE" brand products is distinctive, arbitrary and fanciful, and since its introduction into the markets of the United States,

Canada and the Caribbean Islands by I.C.E., it has enjoyed secondary meaning. A true and correct specimen of the packaging of the "FAIR & WHITE"soap, cream gel in a tube and body clearing cream is attached hereto and made a part hereof by reference as Exhibits "A," "B" and "C," respectively.

16.     On or about April 10, 1999, C.L.M, the alleged owner of the "FAIR & WHITE" mark in France, entered into a written agreement with I.C.E. ("Agreement"), wherein C.L.M. granted and assigned to I.C.E. the exclusive right to register the "FAIR & WHITE" mark in the United States Patent and Trademark Office and to be the owner of all rights, title and interest in the "FAIR & WHITE" mark in the United States, Canada and Caribbean Islands. A true and correct copy of the Agreement is attached hereto and made a part hereof by reference as Exhibit "D."

17.     C.L.M. and I.C.E. entered into the agreement to further their mutual objectives of continuing to develop, market and promote the "FAIR & WHITE" brand name in the United States, Canada, the Caribbean Islands as well as in Europe, and to ensure the proper and swift policing, enforcement and seizure of unauthorized importations or counterfeit products bearing the "FAIR & WHITE" brand name in the United States.

18.     To enhance and protect the "FAIR & WHITE" mark, I.C.E. has developed and implemented a system of quality controls and assurances for "FAIR & WHITE" brand products sold in the United States. I.C.E.'s quality control and assurance standards are an integral part of the value of the "FAIR & WHITE" mark in the United States which has substantially increased I.C.E's goodwill and reputation in the community, and ultimately, sales of "FAIR & WHITE" products sold by I.C.E.

19. I.C.E. has legal rights under the Agreement, and the Agreement constitutes a valid, binding and enforceable contractual relationship between I.C.E. and C.L.M.

20. At all times material hereto, Defendants were aware of and had full knowledge of the Agreement between I.C.E. and C.L.M., and of its general terms and conditions, including that the Agreement transferred and conveyed to I.C.E. all rights, title and interest in and to the "FAIR & WHITE" mark in the United States, Canada and the Caribbean Islands and granted I.C.E the right to register the mark in the United States Patent and Trademark Office in the name of I.C.E.

21. In fact, during late 1998 and early 1999, Farah, for himself or his other numerous companies, including but not limited to, Mitchell Cosmetics, Inc., Continental Cosmetics, Inc. and/or for Gapardis or its related-entity, Gapardis, Inc., purchased "FAIR & WHITE" products from I.C.E., and in connection therewith Farah sought to be I.C.E.'s sales representative of "FAIR & WHITE" products in the South Florida market.

22. However, thereafter in a scheme to illegally profit from the "FAIR & WHITE" brand name, and goodwill and reputation created by I.C.E. for "FAIR & WHITE" brand products in the United States, Defendants engaged in the unauthorized importation, use. offering for sale, sale, distribution and promotion of products bearing the "FAIR & WHITE" mark in the United States, without the consent or authorization from I.C.E.. In addition, in a scheme to improperly obtain the rights to the "FAIR & WHITE" mark in the United States, Canada and the Caribbean Islands for themselves, Gapardis, Saba, Ghandour and Farah intentionally and tortiously interfered with I.C.E.'s Agreement by persuading, inducing and convincing C.L.M.., through Tancogne, to wrongfully stop selling "FAIR & WHITE" products to I.C.E. and to otherwise breach, ignore and disregard the terms and conditions of the Agreement and thereafter to attempt to terminate the Agreement with I.C.E.

23.     Defendants, Gapardis, Saba, Ghandour and Farah are neither approved direct-ship customers of I.C.E. for "FAIR & WHITE" brand products nor are they authorized sales agents, licensees or distributors of I.C.E.

24.     Defendants' unauthorized acts are being committed in and effect interstate commerce.

25.     Unless preliminarily and permanently enjoined by this Court, Defendants will continue to illegally profit from the unauthorized importation, use, sale and distribution of "FAIR & WHITE" brand products in violation of I.C.E's rights under the Lanham Act and Florida law.

26.     Upon becoming aware of Defendants' wrongful conduct, I.C.E. retained the law firm of Mattlin & McClosky to prosecution of this action on its behalf.

27.     All conditions precedent to this action and I.C.E.'s claims asserted herein, if any, have been satisfied, performed, excused and/or waived.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1125(a)
### (Against All Defendants)

28.     I.C.E. realleges, readopts and incorporates by reference the allegations made and contained in paragraphs 1 through 27 above as though fully set forth herein.

29.     This cause of action for federal unfair competition arises under §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

30.     Defendants' unauthorized use and threatened continued use of the "FAIR & WHITE" mark and trade dress in the United States in connection with identical and/or similar goods to those sold by I.C.E, including but not limited to, the unauthorized importation, offering for sale,

sale, distribution and promotion of products bearing the "FAIR & WHITE" mark, which have not been subject to I.C.E.'s quality control standards and which are not distributed through authorized distribution channels, constitutes a false designation of origin, a false or misleading description or representation of fact and a false or misleading representation of the nature, geographic origin and source of the products in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

31.     Defendants' acts are likely to create and are calculated and designed to cause (and have caused) confusion, mistake or deception among wholesalers, retailers and consumers of "FAIR & WHITE" brand products that the products are those sold by I.C.E. or by a company associated, affiliated or licensed by I.C.E. to sell such products, and Defendants' use and threatened continued use of the "FAIR & WHITE" mark and trade dress in the United States, without I.C.E.'s consent or authorization, is likely (if not certain) to deceive and mislead consumers into believing that the products originate from or are associated, approved or authorized by I.C.E. or that the products conform to I.C.E.'s quality control standards.

32.     The aforementioned acts of Defendants constitute a willful, deliberate and intentional attempt to trade and unfairly compete with and illegally profit from the valuable name, goodwill and reputation of I.C.E. and the "FAIR & WHITE" mark and trade dress, and to mislead consumers that the products are those of I.C.E. or someone associated, affiliated, approve, authorized or licensed by I.C.E.

33.     As a direct and proximate result of Defendants' wrongful and tortious conduct alleged herein, I.C.E. has been severely damaged in an amount to be determined at trial, exclusive of costs, disbursements, interest and attorneys' fees, and continues to suffer serious irreparable harm and injury for which it has no adequate remedy at law. I.C.E.'s damages and injury are continuing and

-8-

additional harm to I.C.E. will occur so long as the aforementioned illegal acts of Defendants are not restrained and enjoined.

## COUNT II
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION
### (Against All Defendants)

34.     I.C.E. realleges, readopts and incorporates by reference the allegations made and contained in paragraphs 1 through 27 above as though fully set forth herein.

35.     This cause of action for trademark infringement and unfair competition arises under the common law.

36.     Since its inception into the United States marketplace in 1998, I.C.E. has continuously developed, marketed, promoted, sold and distributed products bearing the "FAIR & WHITE" mark and distinctive trade dress in commerce in the United States, Canada and the Caribbean Islands. I.C.E.'s development and sale of "FAIR & WHITE" brand products pre-dated any of the acts of Defendants complained of herein. By I.C.E.'s first use of the "FAIR & WHITE" mark and distinctive trade dress, I.C.E. acquired rights in the trademark senior and superior to any claimed by Defendants or any others taking by, through or under them.

37.     Defendants' unauthorized importation, use, offering for sale, sale, distribution and promotion of products bearing the "FAIR & WHITE" mark and distinctive trade dress purporting to be "FAIR & WHITE" products authorized, associated, sold and marketed by I.C.E. and Defendants' other conduct as alleged herein constitutes infringement, misappropriation and unfair competition and represents an unjustifiable attempt to profit commercially from valuable name, goodwill and reputation of I.C.E. and the "FAIR & WHITE" mark created and developed by I.C.E.

-9-

in violation of the common law of the state of Florida and the laws of all other states of the Unites States.

38.     Defendants' acts are likely to create and are calculated and designed to cause (and have caused) confusion, mistake or deception among wholesalers, retailers and consumers of "FAIR & WHITE" brand products that the products are those of I.C.E. or of a company associated or affiliated with I.C.E., and Defendants' use and threatened continued use of the "FAIR & WHITE" mark and trade dress, without I.C.E.'s consent or authorization, is likely (if not certain) to deceive and mislead consumers into believing that the products originate from or are some way associated, approved or authorized by I.C.E., that the products conform to I.C.E.'s quality control standards or are associated or affiliated with I.C.E.

39.     By the acts complained of herein, Defendants have deliberately, willfully and intentionally misappropriated the valuable name, goodwill and reputation of I.C.E. and the "FAIR & WHITE" mark and distinctive trade dress for their own benefit and profit, and in direct competition with products sold by I.C.E.

40.     As a direct and proximate result of Defendants' wrongful and tortious conduct as alleged herein, I.C.E. has been severely damaged in an amount to be determined at trial, exclusive of costs, disbursements, interest and attorneys' fees, and has suffered serious irreparable harm and injury for which it has no adequate remedy at law. I.C.E.'s damages and injury are continuing and additional harm to I.C.E. will occur so long as the aforementioned illegal acts of Defendants are not restrained and enjoined.

## COUNT III
## VIOLATION OF FLORIDA TRADEMARK DILUTION ACT
### (Against All Defendants)

41.     I.C.E. realleges, readopts and incorporates by reference the allegations made and contained in paragraphs 1 through 27 above as though fully set forth herein.

42.     This cause of action for trademark dilution and injury to business reputation arises under the Florida Trademark Dilution Act, § 495.151, Florida Statutes.

43.     By virtue of I.C.E.'s continuous advertising, promotion, distribution and sale of "FAIR & WHITE" brand products, the "FAIR & WHITE" mark and trade dress possess and/or have acquired a high degree of distinctiveness that is capable of dilution.

44.     The "FAIR & WHITE" mark and distinctive trade dress identify to the public (and is understood by the public) that I.C.E. is the exclusive source of the products bearing that name, symbol, label or trade dress in the United States, Canada, Caribbean Islands. I.C.E. also enjoys an outstanding business reputation for its "FAIR & WHITE" brand products, which includes but is not limited to, its reputation for quality, effectiveness and reliability.

45.     The aforementioned acts of Defendants have diluted and are likely to continue to dilute the distinctive quality of the "FAIR & WHITE" mark and trade dress and also to injure (and continue to injure or impair) the significance of the "FAIR & WHITE" mark as well as I.C.E.'s outstanding business reputation in violation of the Florida Trademark Dilution Act, §495.151, Florida Statutes.

46.     As a direct and proximate result of Defendants' wrongful and tortious conduct alleged herein, I.C.E. has been severely damaged in an amount to be determined at trial, exclusive of costs and disbursements, interest and attorneys' fees, and has suffered serious irreparable harm and

-11-

injury for which it has no adequate remedy at law. I.C.E.'s damages and injury are continuing and additional harm to I.C.E. will occur so long as the aforementioned illegal acts of Defendants are not restrained and enjoined.

**COUNT IV**
**VIOLATION OF FLORIDA DECEPTIVE TRADE PRACTICES ACT**
**(Against All Defendants)**

47.     I.C.E. realleges, readopts and incorporates by reference the allegations made and contained in paragraphs 1 through 27 above as though fully set forth herein.

48.     This cause of action for deceptive and unfair trade practices arises under the Florida Deceptive and Unfair Trade Practices Act, §§501.201 et seq. Florida Statutes.

49.     Defendants' unauthorized use and threatened continued use of the "FAIR & WHITE" mark and trade dress in the United States in connection with identical and/or similar goods to those sold by I.C.E, including but not limited to, the unauthorized importation, offering for sale, sale, distribution and promotion of products bearing the "FAIR & WHITE" mark, which have not been subject to I.C.E.'s quality control standards and which are not distributed through authorized distribution channels, constitutes unfair methods of competition, unconscionable acts or practices and/or unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act.

50.     As a direct and proximate result of Defendant's wrongful conduct alleged herein, I.C.E. has been severely damaged in an amount to be determined at trial, exclusive of costs and disbursements, interest and attorneys' fees, and has suffered serious irreparable harm and injury for which it has no adequate remedy at law. I.C.E.'s damages and injury are continuing and additional

harm to I.C.E. will occur so long as the aforementioned illegal acts of Defendants are not restrained and enjoined.

## COUNT V
## UNJUST ENRICHMENT AND EQUITABLE ACCOUNTING
### (Against All Defendants)

51. I.C.E. realleges, readopts and incorporates by reference the allegations made and contained in paragraphs 1 through 50 above as though fully set forth herein.

52. Defendants have knowingly, deliberately and intentionally engaged in the unauthorized importation, use, offering for sale, sale, distribution and promotion of products bearing the "FAIR & WHITE" mark and trade dress in the United States and other conduct as alleged herein in an attempt to confuse consumers, to compete unfairly against I.C.E. and to illegally profit from the name, goodwill and reputation of I.C.E. and "FAIR & WHITE" brand products developed by I.C.E. in the United States.

53. As a direct and proximate result of Defendants' wrongful conduct alleged herein, Defendants have been unjustly enriched and have received profits, benefits and other consideration to which I.C.E. would otherwise be entitled under principles of equity. Accordingly, Defendants should be required to account for and disgorge those profits and other benefits received by them through or as a result of their wrongful conduct, and an equitable constructive trust should be placed upon all assets of Defendants in order to protect I.C.E.'s interest in such profits, benefits and other consideration.

## COUNT VI
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Defendants, Farah and Gapardis)

54.     I.C.E. realleges, readopts and incorporates by reference the allegations made and contained in paragraphs 1 through 27 above as though fully set forth herein.

55.     This cause of action for tortious interference with contractual relationship arises under state common law.

56.     At all times material hereto, Farah and Gapardis had full knowledge of the Agreement between I.C.E. and C.L.M., and of its terms, conditions and provisions, including that the Agreement transferred and conveyed to I.C.E. all rights, title and interest in and to the "FAIR & WHITE" mark in the United States, Canada and the Caribbean Islands and granted I.C.E the right to register the mark in the United States Patent and Trademark Office in the name of I.C.E.

57.     I.C.E. had legal rights under the Agreement.

58.     In a scheme to intentionally and unjustifiably obtain the rights to the "FAIR & WHITE" mark in the United States, Canada and the Caribbean Islands for himself and/or Gapardis, Farah and Gapardis tortiously interfered with the Agreement, persuading and inducing C.L.M.., through Tancogne, to wrongfully terminate the Agreement and subsequently award a similar agreement to himself and/or Gapardis.

59.     Farah and Gapardis improperly and wrongfully induced and convinced C.L.M., through Tancogne, to stop selling "FAIR & WHITE" products to I.C.E. and otherwise ignore and disregard the terms and conditions of the Agreement by making various false and misleading misrepresentations about I.C.E., including but not limited to, that I.C.E. was manufacturing and

selling (or intending to manufacture and sell) counterfeit, inferior or non-genuine "FAIR & WHITE" products.

60.     In fact, despite requests from I.C.E. to purchase additional "FAIR & WHITE" products, C.L.M. refused to sell or ship any "FAIR & WHITE" products to I.C.E.

61.     Thereafter, Gapardis, through Farah, and C.L.M., through Tancogne, entered into an exclusive distribution agreement purported dated as of April 2000 but which is believed to not have been conceived, negotiated or drafted until June 2000 and which purports to grant Gapardis rights to the "FAIR & WHITE" mark in the United States, Canada and the Caribbean Islands and to replace the Agreement between I.C.E. and C.L.M.

62.     Subsequently, in August 2000, C.L.M., through Florida counsel, sent counsel for I.C.E. a correspondence attempting to cancel and rescind the Agreement.

63.     As a result of Farah and Gapardis' intentional and unjustified interference with the Agreement, I.C.E. has sustained substantial damages.


## COUNT VII
## BREACH OF CONTRACT
### (Against Defendants, C.L.M. and Tancogne)

64.     I.C.E. realleges, readopts and incorporates by reference the allegations made and contained in paragraphs 1 through 27 above as though fully set forth herein.

65.     Pursuant to the Agreement, C.L.M., by express agreement, and Tanconge, by execution, ratification and affirmation, each had a contractual duty and obligation to comply with the terms, conditions and provisions of the Agreement.

66.     Despite I.C.E.'s request to purchase additional "FAIR & WHITE" products and otherwise compliance with the terms and conditions of the Agreement, C.L.M. and Tancogne have failed, refused or neglected to abide the terms, conditions and provisions of the Agreement.

67.     C.L.M. and Tancogne breached the Agreement, *inter alia*, by refusing to sell any "FAIR & WHITE" products to I.C.E., by selling "FAIR & WHITE" products to others, including but not limited to, Gapardis, with knowledge that the products would be exported and sold in the United States, by entering into another agreement with respect to the rights of "FAIR & WHITE" mark in the United States, Canada and the Caribbean Islands, and by otherwise failing to comply with the terms and conditions of the parties' agreement.

68.     As a direct and proximate result of C.L.M. and Tancogne's breach of contract, I.C.E. has sustained substantial damages.

## DEMAND FOR JUDGMENT

WHEREFORE, I.C.E. prays that this Court grant the following relief:

A.     Order and adjudge that Defendants have infringed upon and unfairly competed with the rights of I.C.E. in and to the "FAIR & WHITE" mark and trade dress and/or that Defendants have unlawfully imported "FAIR & WHITE" products of foreign manufacture in violation of 15 U.S.C. §1125(a) Florida Statutes, §495.151 and §501.203 and under the Florida common law;

B.     Order and adjudge that Defendants, Farah and Gapardis have tortiously interfered with the Agreement between I.C.E. and C.L.M. under the Florida common law;

-16-

C.     Order and adjudge that Defendants, C.L.M. and Tancogne have breached the terms, provisions and spirit of the Agreement between I.C.E. and C.L.M. under the Florida common law;

D.     Order and adjudge that Defendants are liable to I.C.E. for compensatory damages in an amount to be determined at trial, exclusive of interest, costs and disbursements including investigative costs and reasonable attorney's fees;

E.     Order and adjudge that Defendants, and their officers, agents, employees, attorneys, successors, assigns, affiliates, joint venturers, and any person in active concert or participation with any of them, be enjoined and restrained first during the pendency of this action and thereafter permanently and forever from using, importing, selling, offering for sale, distributing or promoting any goods or materials which bear the "FAIR & WHITE" mark and distinctive trade dress, alone or in combination with any another words, terms or symbols, and requiring Defendants to export or destroy all products bearing the "FAIR & WHITE" mark and trade dress, as permitted under 15 U.S.C. §1117;

F.     Order and adjudge that Defendants be required forthwith to supply counsel for I.C.E. with a complete list of all individuals and entities from whom Defendants have purchased and imported products bearing the "FAIR & WHITE" trademark and trade dress and all individuals and entities to whom Defendants have sold, offered for sale and distributed products bearing the "FAIR & WHITE" mark and trade dress;

G.     Order and adjudge that Defendants be required forthwith to deliver to counsel for I.C.E. its entire inventory of infringing and unauthorized products bearing the 'FAIR & WHITE" mark and trade dress in Defendants' possession, custody or control;

-17-

H.      Order and adjudge that Defendants be required to account for any and all profits, benefits and other consideration attributable to its illegal, wrongful and tortious conduct alleged herein, and that in addition, I.C.E. be awarded three (3) times such profits (and/or the value of such benefits or other consideration), or three times any damages sustained by I.C.E., or both, as permitted under 15 U.S.C. §1117(a) and that I.C.E. be awarded prejudgment interest;

I.      Order and adjudge that I.C.E. be awarded the costs and disbursements of this action, including investigative costs and reasonable attorneys' fees, as permitted under 15 U.S.C. §1117(a) and Chapters 495 and 501 of the Florida Statutes;

J.      Order and adjudge that I.C.E. be awarded punitive or exemplary damages to the fullest extent permitted by law; and

K.      Order and adjudge that I.C.E. be awarded such other and further relief as this Court deems just and proper.

Dated: November _29_, 2000.

Respectfully submitted,

MATTLIN & MCCLOSKY
2300 Glades Road
Suite 400, East Tower
Boca Raton, Florida 33431
Tel. (561) 368-9200
Fax. (561) 395-7050

By:_____
        Michael J. Ioannou, Esquire
        Florida Bar No. 982 570

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by

U.S. Mail this _24th_ day of November, 2000 to John Cyril Malloy III, Esquire and Andrew W.

Ransom, Esquire, Malloy & Malloy, P.A., 2800 Southwest Third Avenue, Miami, Florida 33133-

3772.

_____
Michael J. Ioannou, Esquire

H:\LIBRARY\99044003\Pleading\Complaint.Fair&White1.wpd

-19-