UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-CV-02280-HUCK/OTAZO-REYES

I.C.E. MARKETING CORP., et. al,

    Plaintiffs/Counter-Defendants,

v.

GAPARDIS HEALTH AND BEAUTY, INC.,
et. al,

    Defendants/Counter-Plaintiffs.
_____/

## ORDER ON REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon the motion of Counter-Plaintiff Gapardis Health and Beauty, Inc. ("Gapardis") for Award of Damages for Violation of Permanent Injunction [D.E. 438], filed December 9, 2013. THE MATTER was referred to the Honorable Alicia M. Otazo-Reyes [D.E. 457]. The Magistrate Judge issued an initial Report & Recommendation recommending that the motion be granted [D.E. 485]. This Court adopted the initial Report & Recommendation as to all issues except for whether I.C.E. Marketing Corp. ("I.C.E.") violated the permanent injunction, and requested a supplemental report on that issue alone [D.E. 495]. The Magistrate Judge issued a supplemental Report & Recommendation recommending that I.C.E. had violated the injunction [D.E. 497]. I.C.E. filed objections to the supplemental Report & Recommendation [D.E. 498], and Gapardis responded [D.E. 499].

THE COURT has conducted an independent review of the record. For the reasons discussed below, the Court declines to adopt the conclusions of law of the supplemental Report &

1

Recommendation, and holds that the trade dress for Clair & White beauty products produced by I.C.E. did not violate the specific terms of this Court's permanent injunction.

## BACKGROUND

The facts underlying Gapardis' motion are set forth in detail in the initial Report & Recommendation [D.E. 485], the Court's order adopting in part the Report & Recommendation [D.E. 495], and the supplemental Report & Recommendation [D.E. 497]. In 2003, the parties entered into a permanent injunction which forbade I.C.E. from packaging its beauty products in trade dress "confusingly similar" to the trade dress employed by Gapardis for its Paris Fair & White line of skin-lightening creams and lotions. In relevant part, the injunction states as follows:

> Counter-Defendants, I.C.E. MARKETING CORP., a/k/a and d/b/a INTERNATIONAL COSMETICS EXCHANGE, INC., and JACOB "JACK" AINI . . . are permanently enjoined and restrained: a) From using: i) the trademark "PARIS FAIR & WHITE", ii) the trademark "FAIR & WHITE", iii) the inherently distinctive trade dress which has been used in connection therewith, said trade dress consisting of **embossed or raised gold foil lettering separated by an enlarged blue ampersand and underlined in the same embossed or raised gold foil lettering, and a vertically imposed rectangular embossed or raised gold foil background to the left of the primary embossed or raised gold foil wording which background is inset with blue lettering** ("FAIR & WHITE Trademarks and Trade Dress"), or iv) **any trademark or trade dress confusingly similar thereto** . . . (emphasis added).

Partial Final Order of Dismissal Upon Settlement and Permanent Injunction [D.E. 412], § 3(a). The injunction also provides for $100,000 in damages for any violation. *Id.* § 6.

Nearly a decade after entering into the injunction, Gapardis learned that I.C.E. had produced and sold a line of skin-lightening products under the Clair & White brand.[1] Gapardis

---

[1] As noted in the Court's order adopting in part the initial Report, I.C.E. received Gapardis' permission, in a side agreement to the consent injunction, to use the brand name "Clair White." Therefore, the similarities between the two brands' names are irrelevant to Gapardis' motion for contempt. The only relevant consideration is whether I.C.E.'s

2

believed that the trade dress used for the Clair & White brand violated the injunction, and filed a motion to hold I.C.E. in contempt [D.E. 438]. The Magistrate Judge held an evidentiary hearing on the motion on September 17, 2014 [D.E. 482]. Following the hearing, the Magistrate Judge entered an initial Report & Recommendation recommending that I.C.E be found in contempt of court for violating the injunction [D.E. 485]. I.C.E. objected that the Report & Recommendation had improperly considered a number of elements of the Clair & White trade dress's design that were not protected by the injunction [D.E. 489].

After considering I.C.E.'s objections, this Court declined to adopt the Report's conclusion that I.C.E. violated the terms of the permanent injunction [D.E. 495]. The Court directed that Gapardis' claim that I.C.E. had violated the permanent injunction should be analyzed by considering

> whether Gapardis has shown, by clear and convincing evidence, that the Clair & White trade dress is confusingly similar to the overall appearance of the Fair & White design elements specified in the injunction. The Court should consider the design elements described in the injunction (i.e., an "enlarged blue ampersand," "embossed or raised gold lettering," etc.), but should view those elements as a whole. In other words, Gapardis need not show that I.C.E. misappropriated every single design element specified in the injunction. Rather, Gapardis must show that, overall, the Clair & White trade dress is confusingly similar to the combined elements of the Fair & White trade dress, as those elements are defined in the injunction.

Subsequently, the Magistrate Judge issued the supplemental Report & Recommendation, recommending again that I.C.E. be found in violation of the permanent injunction [D.E. 497]. I.C.E. filed objections [D.E. 498]. I.C.E. argues that the Court should not adopt the supplemental Report & Recommendation, because the Clair & White trade dress employs only a small fraction

---

subsequent addition of the ampersand to the "Clair White" brand name placed I.C.E. in violation of the injunction. As further described below, it did not.

of the Paris Fair & White trade dress, as defined by the injunction.

## ANALYSIS

The specific and detailed language of the injunction controls the Court's analysis of Gapardi's motion to hold I.C.E. in contempt, as a claim predicated on a consent injunction "begins with a close examination of the judgment." *Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1240 (11th Cir. 2000). As the Court noted in its prior order [D.E. 495], the language in the parties' injunction here was relatively detailed. The injunction does not simply forbid I.C.E. from producing any trade dress "confusingly similar" to the Paris Fair & White trade dress, as courts have done in other cases. *See, e.g., Eskay Drugs In.c v. Smith, Kline & French Labs.*, 188 F.2d 430, 431 (5th Cir. 1951)); *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994).[2] Rather, the injunction lists approximately six carefully defined design elements that, when viewed as a whole, make up the "inherently distinctive trade dress" for Paris Fair & White. The injunction also provides for a stiff automatic penalty—$100,000 per violation.

As I.C.E. convincingly argues, and as many courts and observers have noted, the injunction's high degree of specificity ironically diminished the protection it affords. Professor Thomas McCarthy likens the listing of elements in a trade dress injunction to those defined in a patent. McCarthy on Trs. and Unfair Comp. § 8:3 (4th ed. 2014). In a claim brought on a utility patent, "[p]racticing less than all of the elements . . . is not an infringement." *Id.* Therefore, Professor McCarthy concludes that "[t]he irony of both patent claims and definitions of trade dress

---

[2] Gapardis relied heavily on *Eskay Drugs* and *Wella Corp.* in its legal arguments before the Magistrate Judge, and in its motion opposing I.C.E.'s objections to the initial Report & Recommendation. *See, e.g.,* Response [D.E. 493] at 3. According to Gapardis, these decisions stand for the proposition that "violation of a permanent injunction prohibiting the use of another's trade dress should be based upon adjudications of colorable imitation and confusing similarity." *Id.* These cases, however, applied simple injunctions that prohibited the enjoined parties from using "any colorable imitation" of the plaintiff's trademark, *Eskay Drugs*, 188 F.2d at 431, or of using a "confusingly similar" trademark, *Wella Corp.*, 47 F.3d at 47. This case, on the other hand, presents a much more detailed injunction requiring a closer examination of the trade dress specifically detailed and protected by the consent order.

4

is that the more elements that are listed, the narrower and weaker the claim." *Id.* As succinctly stated by the Seventh Circuit, "[t]he more specific the order, the more opportunities for evasion ('loopholes')." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431 (7th Cir. 1985); *see also Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 632 (6th Cir. 2002) (criticizing a complaint listing nine protectable trade dress features as "perplexing," because the defendant could easily evade liability for infringement by dropping a few similarities, but retaining the rest); 4 Callmann on Unfair Comp., Tr., & Mono. § 23:55 (4th ed. 2014) ("The use of more specific language in an injunction is not necessarily desirable because it increases opportunities for evasion.").

The application of the injunction's language to the trade dress at issue in this case bears out the proposition that detailed consent orders often create loopholes. The injunction specified the following as elements of Gapardis' protected trade dress:

1) embossed or raised gold foil lettering
   a. separated by an enlarged blue ampersand
   b. underlined in the same embossed or raised gold foil lettering
2) a vertically imposed rectangular embossed or raised gold foil background
   a. to the left of the primary embossed or raised gold foil wording
   b. which background is inset with blue lettering

A side-by-side comparison of the Clair & White and Paris Fair & White trade dress demonstrates that, while the Clair & White trade dress does, in some aspects, appear somewhat similar to its protected counterpart, most of the above-listed elements are lacking. The Clair & White trade dress does employ "embossed or raised gold foil lettering." However, the words "Clair" and "White" are separated by a gold ampersand of the same size font as the words, and not an "enlarged blue" ampersand. Further, the words "Clair & White" are not "underlined in the same embossed or raised gold foil lettering." Rather, a gold foil bar runs across the lower portion

5

of the entire front of the Clair & White packaging. Finally, the second major component of the protected Paris Fair & White trade dress—the "vertically imposed . . . background" set "to the left of the primary . . . wording"—is entirely absent from the Clair & White packaging.




In other words, of the approximately six protected design elements specified in the Court's injunction, only one (the "embossed or raised gold foil lettering") is entirely reproduced on the Clair & White trade dress. Another two are arguably borrowed in part—the Clair & White packaging employs an ampersand but not an enlarged blue one, and it includes a wide gold bar running across the bottom of the entire package, rather than a distinct underline under the text. The remaining protected elements are entirely absent from the Clair & White trade dress. The Clair & White packaging has no "vertically imposed rectangular embossed or raised gold foil background to the left of the primary embossed or raised gold foil wording," much less one that is "inset with blue lettering."[3]

---

[3] While there is no rectangular background on the face of the Clair & White trade dress, there is a bar to the side of the Clair & White wording on the end flap of the package. The Report reached its conclusion that I.C.E had violated the injunction in part by relying on the similarity of this bar to the rectangular background inset with blue lettering that appears on the face of the Paris Fair & White trade dress. I.C.E. argues that the Report's consideration of the end flap of the Clair & White box, with the face of the Paris Fair & White box, was erroneous, because trade dress violation claims are assessed from the viewpoint of the consumer, and a consumer would not see the end flap of the Clair & White packaging as it would typically be situated on a store shelf or design case. *See Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 38 (1st Cir. 2001). However, even assuming for argument's sake that it was appropriate to compare the end flap of the Clair & White box with the face of the Paris Fair & White box, the Clair & White trade dress is insufficiently similar to the Paris Fair & White trade dress to violate the injunction. The end flap of the Clair & White trade dress includes a gold bar, which is a continuation of the gold bar running across the face

In short, though the Clair & White trade dress bears some visual similarity to the Paris Fair & White trade dress, this is insufficient to hold I.C.E. liable for violating the terms of the carefully worded injunction. Rather, to demonstrate its entitlement to the $100,000 penalty provided for in the injunction, Gapardis must show, by clear and convincing evidence, that I.C.E. violated the actual terms of the injunction. *See Sierra Club v. Meiburg*, 296 F.3d 1021, 1031 (11th Cir. 2002) ("[A]ny command of a consent decree or order must be found within its four corners, and not by reference to any purposes of the parties or of the underlying statutes.") (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 233 (1975)). Because the Clair & White trade dress lacks a significant majority of the design elements protected by the injunction, Gapardis has failed to show that the Clair & White trade dress is confusingly similar to the specified protected elements of the Paris Fair & White trade dress, viewed individually or as a whole. Therefore, it is hereby ORDERED as follows:

> (1) the Court declines to adopt the Supplemental Report & Recommendation [D.E. 497];
>
> (2) the Motion for Judgment for Award of Damages for Violation of Permanent Injunction [D.E. 438] is DENIED;
>
> (3) I.C.E.'s Motion in Objection to the Supplemental Report & Recommendation [D.E. 498] is GRANTED; and
>
> (4) I.C.E.'s Motion in Objection to the initial Report & Recommendation [D.E. 489], is GRANTED IN PART and DENIED IN PART, as stated in the Court's order adopting in part in the initial Report & Recommendation [D.E. 495].

---

of the box. This gold bar is only "to left of the primary embossed or raised gold foil wording" on one end of the box; on the other end, it is to the right of the wording. Further, this bar is not "inset with blue lettering."

DONE in Chambers, Miami, Florida, July _13_, 2015.

                                                  Paul C. Huck
                                                  United States District Judge

**Copies furnished to:**
The Honorable Judge Alicia M. Otazo-Reyes
All counsel of record